## WILDER and others *vs.* KEELER and others.

Equitable rules are adopted by the court of chancery in the administration of legal assets, except in cases where the law has given an absolute preference to one class of creditors over another.

Where there are both legal and equitable assets, and a creditor, having a preference as to the legal assets, has been partially paid out of such assets, he cannot receive any share of the equitable assets until the other creditors have received sufficient to place them upon an equality with him; and then all the creditors will be paid rateably out of the assets which remain.

Upon the death of one of the partners, a joint creditor of a partnership has no claim for the payment of his debt out of the separate estate of the deceased partner until all the separate creditors of such partner have been paid their demands out of his estate.

So the creditors of the individual partners have no claim upon the partnership property until all the partnership creditors are satisfied.

If the surviving partners are insolvent, the joint creditors can, in chancery, claim satisfaction out of the separate estate of the deceased partner after payment of the debts due to his separate creditors.

Where there is a joint debt, but there never was any joint fund, and the joint creditor looked originally to the separate property of the joint debtors respectively for the payment of his demand, and, upon the death of one of the debtors, the survivor is insolvent, and the fund to be distributed in chancery consists of equitable assets, the joint creditor will be permitted to come in upon the fund with the separate creditors of the deceased debtor,

at least for one half of his debt; but if the assets are legal, the separate creditors cannot be deprived of their legal preference.

Creditors of a partnership can claim their entire debt out of the partnership fund, although they have a security from third persons who sustain the character of sureties for the partnership.

The sureties in such case have an equity that the creditor should for their indemnity prove his demand, and collect it if possible, against the estate of the principal debtors.

Where some of the creditors of a partnership have obtained satisfaction of part of their debts out of the joint estate, they will not be permitted to come in upon the equitable assets belonging to such estate, rateably with the other creditors, who have received nothing, until the last mentioned creditors have received sufficient out of the estate to put them all upon an equality.

Where one of several partners is not only jointly liable for a joint debt, but is also separately liable as endorser for the firm, his separate estate as to such debt is to be considered as legal assets, and must be [applied in payment thereof, in preference to the joint debts due the other creditors ; but the joint estate being primarily liable, that must be first applied towards the payment of such debt.

March 20.    THE bill in this case was filed by the complainants in behalf of themselves and the other creditors of G. F. Lush, deceased, against his heirs and personal representatives for an account and distribution of his personal effects, and for a sale of his real estate for the payment of his debts.   The estate was insolvent to a large amount, principally on account of debts due from the partnership between himself and Edwin Jessup and Henry Vandenburgh, trading under the name of "Edwin Jessup."   Debts to a considerable amount were due from the decedent individually, one of which was for money received by him under the decree of one of the equity courts as the guardian of infants in a partition suit.   Some few debts were also due from him jointly with H. Vandenburgh.   Lush died in December, 1828, leaving his two partners him surviving; and leaving in their hands partnership effects to the amount of twenty or thirty thousand dollars.   Shortly after the death of G. F. Lush, Jessup and Vandenburgh stopped payment; and Jessup, with the assent of Vandenburgh, assigned the greatest part of the partnership effects to D. & B. Wood, in trust, to pay certain creditors of the firm of Edwin Jessup.   On the coming in of the answers of the defendants, a decree was entered in the usual form, referring it to a master to take an account of the personal estate, and of the situa-

tion and value of the real estate, with the usual notice to the creditors of the decedent to come in and prove their debts before the master. Under this order the master received proof of debts due from the firm of Edwin Jessup to the complainants, and to several other persons not provided for in the assignment to D. & B. Wood. Also for two or three debts due from Lush and Vandenburgh, jointly, as well as of the separate debts of Lush, which were due from him individually. It also appeared by the proceedings in another suit that the present complainants, and others who had come in and proved their debts before the master, were proceeding as judgment creditors of the surviving partners of the firm of Edwin Jessup, to reach the residue of the partnership property not assigned to D. & B. Wood ; and that they were also seeking to set aside that assignment, on the ground that it had not been executed by both of the surviving partners, and also by the administrator of the decedent. The Farmers and Mechanics' Bank held several notes due from the partnership, endorsed or secured by the friends of the partners, which notes the bank claimed the right to prove, under the decree, for the benefit of those persons who stood in the situation of sureties. The complainants and other creditors resisted the proof of these demands, on the ground that they were secured to nearly their full amount by the assignment to D. & B. Wood, a part of which amount had actually been paid. It appeared by the testimony of D. Wood, before the master, that 42 per cent. of the principal of the notes had been paid out of the funds assigned, and that there would probably be enough of the fund to pay 85 per cent. of the principal and interest, including what had already been paid. The master deducted the amount which had actually been paid upon these debts out of the assigned fund, and permitted the bank to make proof for the residue, reserving the question as to what they were to receive on a final distribution for the decision of the court. Some of these notes had been endorsed by G. F. Lush in his individual capacity. A debt was allowed by the master in favor of B. Osborn & Co., although it appeared that another distinct debt to that firm was provided for by the assignment. The complainants excepted to so much of the report as admitted

the debts of the Farmers and Mechanics' Bank to proof, and also to the proof of the debt of B. Osborn & Co. The cause was heard upon the master's report, upon the exceptions, and upon the equity reserved. In the mean time an order was made for the sale of the estate, and to bring the money into court to abide the decree which should be made therein.

*J. Edwards,* for the complainants.

*H. Bleecker,* for the Farmers and Mechanics' Bank.

*B. R. Wood,* for B. Osborn & Co.

The Chancellor. I have bestowed much time upon the examination of this case, with a view to settle the complicated equities between these creditors upon the general principles which govern this court, and consistent with the rules laid down in adjudged cases. Previous to the decision of Chancellor Kent, in *Thompson* v. *Brown,* (4 *John. Ch. R.* 619,) I supposed it was well settled that in this court legal assets must be distributed according to the common law, in a due course of administration, and that the court only refused to give a preference to one debt over another of the same class; that is, that all the judgments against the decedent which were not, at law, a lien upon the fund to be distributed, must be paid in the first place, but rateably only, and without regard to the time in which they were entered; and debts of the several other classes in the same manner; that it was only judgments or decrees obtained against the personal representatives, which gave the creditors, obtaining such judgments, a privilege over other creditors whose debts were originally of the same class. I supposed this was the meaning of the usual decree for the payment of the debts in a due course of administration, and without preference to any; and that the expression, " without preference to any," only meant without that preference which the personal representative, or heir at law, had a right to give to debts of a particular class over other debts of the same class, previous to the commencement of a suit against him.[a]  As the principles

(a) See *Ram. on Assets,* 317, 337.

of that decision are now incorporated into the revised statutes, (2 *R. S.* 87, § 27,) it is not necessary in this case, and may not be in any other, to express an opinion as to the law as it existed when that decision was pronounced. Here were no judgments against G. F. Lush, and there were no specialty creditors, unless he had given a bond to the equity court for the faithful performance of his trust as guardian of the infants in the partition suit. Whether he had given such bond or not, does not appear from the report of the master. But I believe, as the law then stood, the guardian ad litem in the equity court was not compelled to give a bond and security. If the fund in this case could be considered equitable instead of legal assets, the principles adopted under the English bankrupt laws would form a proper guide for the equitable administration of the fund. Equitable rules also are adopted by this court in the administration of legal assets, except so far as the law has given an absolute preference to one class of creditors over another. Thus, if there are both legal and equitable assets to be administered, although this court cannot deprive a creditor of his legal preference, over creditors of a different class, as to the legal assets, yet if he has been partially paid out of such assets, he will not be permitted to receive any share of the equitable assets until the other creditors have received sufficient to put them upon an equality with him. And when that object has been accomplished, all the creditors will be entitled to come in, upon the assets which remain, for the payment of the residue of their debts rateably. (*Morrice v. The Bank of England, Cases Temp. Talbot,* 220.)

One of the leading principles in the administration of the English bankrupt laws is, that a joint creditor of the partnership shall not be permitted to prove his debt against the estate of an individual partner until all the separate creditors of that partner have been paid out of his estate. On the other hand, the creditors of the several partners cannot claim a dividend out of the joint estate until all the partnership creditors are paid, and then they are permitted to come in upon the surplus. (*Ex parte Crowder,* 2 *Vern.* 706. *Ex parte Clay,* 3 *Ves.* 238. *Ex parte Barnard,* 1 *Glyn. & Jam. Rep.* 309.) This is precisely the legal rule which would control the distribution of the funds belonging to the respective estates, upon the death

of an individual partner, as in this case.   It is well settled that the representatives of the deceased partner cannot be sued, at law, for the partnership debts, but that the suit must be brought against the survivors, into whose hands the partnership effects pass by surviorship for the payment of those debts.   The representatives of the deceased partner are only entitled to their share of the surplus ; and that share alone can be reached by his separate creditors, either at law or in equity. On the other hand, the separate estate of the deceased partner, in the hands of the personal representatives, and the real estate descended to the heirs at law, are legal assets, which the separate creditors only can reach by a suit at law, against the administrator or the heirs.   It is true the joint creditors, upon an allegation of the insolvency of the surviving partners, have an equitable right to come into this court to compel a satisfaction of their debt out of the estate of the deceased partner.   This, however, is an equity existing only against the heirs and representatives of the decedent, but not against his separate creditors.   If, in the present case, there is no possibility of getting any thing from the surviving partners, and the joint creditors have received nothing on account of their debts since the death of Lush, then indeed the equities of the joint and separate creditors may be equal.   But even in such a case this court has no power to deprive the separate creditors of their prior right to these legal assets at law. For, where the equities are equal, the legal right must prevail. This point is not without authority, although I have been surprised that so little is to be found in the books in relation to a question which must have arisen so frequently.

In *Ex parte Elton*, (3 *Ves. R.* 240,) Lord Rosslyn, in discussing the right of a separate creditor to come in upon the joint estate, says he has always understood it as settled by a great variety of cases, not only in bankruptcy but upon general equity, that the joint estate is applicable to partnership debts, and the separate estate to separate debts.   In *Gray* v. *Chiswell*, (9 *Ves.* 118,) under a decree for administering the estate of a deceased partner, Lord Eldon followed the rule in bankruptcy, and held that the creditors of the joint estate, which was insolvent, could not come in for a share of the sep-

arate estate of the decedent until the separate creditors had been paid. It is true that in the recent case of *Cowell* v. *Sikes*, (2 *Russ. R.* 19,) Lord Eldon, by consent of parties, after he had resigned the seals, and in opposition to the decision of the late Lord Gifford, master of the rolls, permitted a joint creditor to prove his debt against the separate estate of one of the joint debtors who had died after interlocutory judgment obtained against him at law. Even in that case, however, the deliberate judicial opinion of Lord Gifford is entitled to full as much weight as the extra judicial authority of the late lord chancellor. It is indeed a little singular that Lord Eldon should have arrived at such a conclusion, even under the peculiar circumstances of that case, after the surprise he had expressed a few years before, that courts of equity ever should have given a remedy against the estate of a deceased debtor where the creditor had neglected to secure a legal right by a several as well as a joint contract. (*See Kendall, Ex parte*, 17 *Ves.* 519.) I cannot, however, concur with his lordship in the expression of surprise at the adoption by the court of chancery of such a plain and obvious principle of equity, so far as regards the joint creditor and the representatives of the decedent. I have only been surprised that the principle had not been adopted by some of the learned and distinguished judges who adorned the English court of chancery, at a much earlier period. But the case of *Cowell* v. *Sikes*, even if regarded as good authority against the opinion of Lord Gifford, does not in reality conflict with the decision of Lord Eldon, in *Gray* v. *Chiswell*, made twenty four years previous. In the one case there was originally not only a joint debt, but also a joint fund for the payment thereof. In the other there was only a joint indebtedness; but the debtors were not partners, and there never was a joint fund out of which the debt could have been collected. It must therefore have been the original understanding of the creditors, at the time that debt was contracted, that in case of default in payment, they were to look to the separate property of the debtors respectively for the payment of their demand. In such a case, if the fund to be distributed was equitable assets, and the survivor was insolvent so that nothing could be obtained from him, it would be

1832.

Wilder
v.
Keeler.

a matter of course to permit the creditors to come in upon the fund with the separate creditors of the decedent, upon the footing of equality, at least as to one half of the debt. But if the fund was legal assets, Lord Gifford was right in refusing to permit the petitioners to deprive the separate creditors of the preference which had been given them by law.(a) In the case now under consideration there was, at the death of G. F. Lush, a large joint fund belonging to the partnership, out of which the joint creditors were entitled to a priority of payment, and out of which several of the joint creditors who have come in under this decree have actually secured a portion of their debts. Nothing but an unbending rule of law should, under such circumstances, induce the court to permit them to come in for the residue of their debts, rateably, with the separate creditors.

The amount of the fund which will remain after paying the separate creditors, being a fund which could not be reached at law by the joint creditors whose remedy survived against the surviving partners alone, must be considered in the nature of equitable assets, and must be distributed among the joint creditors upon the principle of this court that equality is equity. In the application of this principle reference must be had to the situation of the parties at the death of G. F. Lush. Any security which these creditors then held belonging to the partnership or principal debtors, must be first applied to the payment of their respective debts, as far as it will go; and such creditors will then be permitted to come in for the residue of those debts, upon terms of equality with the other joint creditors upon this equitable fund. (*Ex parte Blackburn,* 10 *Ves.* 204. *Ex parte Reid, Buck's Cas.* 239. *Ex parte Rathbone,* 3 *Mad. R.* 134.) The creditors are, however, entitled to prove for their whole debts, notwithstanding any securities they may have from third persons who stand in the situation of mere sureties for the partnership. (*Ex parte Goodman,* 3 *Mad. Rep.* 373. *Ex parte Parr,* 1 *Rose's R.* 76.) The sureties in such a

(a) See *M'Culloh* v. *Dashiell's Adm'r,* 1 *Har. & Gills' Rep.* 96; *Hall* v. *Hall,* 2 *McCord's Ch. Rep.* 302; *Morgan* v. *His Creditors,* 20 *Martin's Rep.* 599, S. P.

case have an equity that the creditor should prove his demand against the estate of the principal debtors and against the separate estate of each, as far as it can be done for their indemnity. It is therefore the duty of the bank, in this case, to obtain what it can from the estate of G. F. Lush, as one of the partners, notwithstanding it has the collateral security, or subsequent endorsements of third persons standing in the situation of sureties for the firm and for the several partners. But those creditors of the joint estate who have obtained security or satisfaction for any part of their debts out of the joint estate since the death of Lush, will not be permitted to come in rateably upon these equitable assets, with the other joint creditors who have obtained nothing; nor until the last mentioned creditors have received sufficient out of the estate to put them all upon the terms of equality.

Applying these principles to the claim of B. Osborn & Co. it follows that that company is not entitled to come in upon terms of equality with those creditors of the partnership who have received nothing from the company funds since the death of Lush. It is true B. Osborn & Co. have received nothing on account of the particular debt which they proved before the master. But in equity it can make no difference whether the claim of a creditor against the estate consisted of several distinct items of debt, or was all embraced in one note or account. If these creditors have received the whole or the greater part of one of their demands, out of the funds which were primarily liable for the payment of the partnership debts, their other demands should be postponed until the other creditors have received an equal proportion of the whole of their demands also. If these creditors wish to come in upon the residue of the fund which may remain after payment of the separate creditors of Lush, it must be referred back to the master to ascertain the whole amount of all their demands, including interest thereon up to the date to which interest is cast in the present report, and also to report the amount which has been paid or secured on account of those demands, out of the partnership funds, since the death of Lush; the amount of such security to be ascertained by a sale thereof, as hereafter mentioned. As it appears, however, that the fund assigned to D. & B. Wood,

for the payment of certain preferred creditors of the company, is in litigation between them and the present complainants and other creditors who have come in under this decree, nothing can be paid to any of those creditors until it is ascertained by the result of that litigation which party is entitled to that fund. The shares of the creditors who have received nothing, and who cannot in any event receive any thing from the partnership funds, can in the mean time be apportioned and paid over to them at the same time when the amounts due to the separate creditors of Lush are distributed and paid ; reserving to them a right to a further distribution, if the result of that litigation makes it proper.

The claim on the part of the bank presents a different question. It appears by the report of the master, that upon a part of the notes held by that institution at the death of G. F. Lush, he was not only holden jointly as a partner, but that he was also separately and individually liable as the endorser. As his heirs and personal representatives could be sued at law upon these endorsements, it follows, from what has been previously said, that as to those particular notes, the separate estate of Lush is to be considered as legal assets. The joint estate, however, was primarily liable ; and whatever has been paid or secured to the bank out of that fund must be first applied towards the payment of all the notes held by the bank, rateably. The balance remaining due on the particular notes endorsed by G. F. Lush will then form a legal debt, and will be entitled to priority of payment, as against the joint debts due to the other creditors of the firm. A creditor of the joint estate is always entitled to whatever he can obtain out of that fund in the hands of the surviving partner, without relinquishing his security against the separate estate of the deceased partner. (*Ex parte Peacock*, 2 *Glyn. & Jam. Rep.* 27. *Ex parte Ladbroke*, 2 *Id.* 81. *Ex parte Wildman*, 1 *Atk. Rep.* 109.) In this case, however, the balance due on the notes not endorsed by G. F. Lush can only come in as an equitable claim upon the fund which may remain after the payment of the separate creditors. If therefore, the bank obtains a legal preference against the estate of G. F. Lush, by means of his separate endorsement on some of these notes, that institution will have no claim on account

of the notes not so endorsed, until the other joint creditors have received enough to place them upon a footing of perfect equality. It must, therefore, be referred back to the master, to ascertain the amount due on the notes thus endorsed, after deducting the amount already received or secured as aforesaid, out of the joint estate.

There can be no division or distribution of the fund until the value of that portion of the securities which remains in the hands of D. & B. Wood is ascertained ; and if the parties cannot agree upon that amount, the interest of the bank in those securities must be sold, under the direction of the master, and the produce of that sale credited on the demands. This course was pursued in the case of *Reid, Ex parte,* (*Buck's B. C.* 239,) and *Ex parte Richardson,* (14 *Ves.* 188,) where the balances which the creditors were entitled to prove could not be ascertained in any other way.

As I can see very little benefit which will result to any of these creditors by further litigation in relation to the fund assigned to D. & B. Wood, I would suggest to the parties the propriety of dismissing the bill filed against them, so far as respects the assigned fund ; and to pay the costs of both parties in that suit out of the funds of the joint estate in the hands of the receiver, if there is sufficient for that purpose ; and to have the residue of the joint estate in his hands distributed among the creditors of the partnership who have come in under this decree. The parties can then ascertain their several rights, in this suit, upon the principles above declared ; and by that means this estate may be distributed, without further delay, among the several parties entitled thereto. In that case the costs of all the parties in this suit will be paid out of the fund which is under the control of the court in this cause, before distribution.