By the Court, Bronson, J.
Whatever may be the rights and obligations of the partners as between themselves, they are all alike answerable to third persons for the debts of the firm, unless a limited partnership was formed, and the business has since been transacted in the manner prescribed by the statute. (1 R. S. 764, tit. 1.)
The certificate to be made and acknowledged by the parties, must state, among other things, the period when the partnership is to commence, and when it will terminate, (§ 4;) and the terms of the partnership must be published in two newspapers for at least six weeks: otherwise the partnership will be deemed general. (§ 9.) It is conceded in this case that all the papers were sufficient in point of form, and that notice was duly published. But there was a mistake in the notice, which stated that the partnership was to commence on the 16th of November, when it should have been October. If there were any reason to suppose that the error was intentional, or if this contract had been made before the time mentioned in the notice for the commencement of the partnership had arrived, the objection would be fatal. But as it is not pretended that the error was designed, *312 or that it has had any influence upon this contract, I think the objection to the notice was properly overruled. There was a substantial compliance with the statute, and that is enough.
Assuming that the partnership was properly formed, it is then said that the defendant Gould has rendered himself liable to answer ás a general partner, in consequence of the title to the mill having been taken in the names of all the partners.
Under our law of limited partnerships, an individual, called a special partner, is allowed to have an interest in the profits of a particular business, without incurring any other hazard than that of losing the sum which he has contributed to the common stock. To secure this immunity, the partnership must be formed and published in a particular manner, and the special partner must contribute in cash some portion of the capital stock. (§ 2,4.) From the nature of the case, this contribution can only be made by placing the money at the disposition of the general partner; and no part of it can be withdrawn by the special partner at any time during the continuance of the partnership ; but he may have interest on the money, and. a share of the profits, if such payments will not reduce the original amount of capital. (§ 15, 16.) The business of the partnership is to be transacted by the general partners exclusively, who may sue and be sued in the same manner as though there were no special partner. (§ 3, 14.) The special partner must neither be named as a member of the firm, nor transact any business on account of the partnership. (§ 13, 17.) Such is an outline of the terms upon which an individual may be a special partner, without incurring any other peril than the loss of his contribution to the common stock.
It is said that the purchase of the mill in the name of all the partners, may affect the defendant Gould in two ways : 1. As an actor in the business of the partnership; and 2. As a withdrawal of a portion of the money which he had contributed to the capital stock.
First. The special partner may examine and advise in relation to the management of the partnership concerns; “ but he shall not transact any business on account of the partnership, *313 nor be employed for that purpose as agent, attorney, or otherwise. If he shall interfere contrary to these provisions, he shall be deemed a general partner.” (§ 17.) If the defendant Gould went beyond advising with his partners, and was actively concerned in negotiating and making the purchase of the mill, he has clearly rendered himself liable to answer as a general partner, so far as relates to any liability of the partnership growing out of that particular transaction. And we think he must also be deemed a general partner as to all the debts and liabilities of the firm. The legislature has plainly manifested the intention of excluding the special partner from all active participation in the business of the firm; and his interference is forbidden upon the pain of losing his character and protection as a special partner. The moment he engages in the business of the firm, he violates one of the conditions on which his exemption from liability depends, and he becomes a general partner by his own voluntary act.
Second. The title to the mill should have been taken in the names of the general partners alone. The legislature evidently intended that the legal title to all the partnership property should be vested in the general partners; that they should sue and be sued; and that the whole business should be conducted just as though there were no special partner in the case. By taking a conveyance in the names of all, Gould became a tenant m common with his associates, and was the legal owner of one third of the estate. (Coles v. Coles, 15 John. 159.) The general partners could not convey his share of the land, nor could it be reached by a judgment against them, without the aid of a court of equity. A judgment against Gould would at law be a lien on one third of the estate; he might alien or incumber it, and on his death it would descend to his heirs at law. It is true that in a court of equity Gould would be treated as a trustee of the property, and would be compelled to convey for the purpose of paying debts and adjusting the equities of the several co-partners. This subject is discussed and the cases collected in 3 Kent, 37-39; Coll. On Part. 69-75; Story On Part. 126-9; Gow On Part. 33,232. And see Wilder v. Keeler, (3 Paige, 167;) Egberts *314 v. Wood, (id. 517;) Payne v. Matthews, (6 Paige, 19;) Innes v. Lansing, (7 Paige, 583.) But it is entirely clear that at law the title to the land vested in. the several grantees as tenants in common, without any reference to their co-partnership relations. And even in a court of equity, the land could not he reached in the hands of a bona fide purchaser or mortgagee.
The mill cost over eighteen thousand' dollars, and as the legal title to one third of it vested in Gould, more than six sevenths of the-capital, which he had contributed was, in effect, withdrawn from the control, of the general partners; and was also placed beyond the reach of creditors, so far as relates to their' remedies at law." The statute provides that “no part of the sum which any special partner shall. have contributed to. the capital stock shall be withdrawn by him, or paid ox .transferred to him, in the shape of dividends,. profits, or otherwise, at any time during the continuance of the partnershipbut he may •receive annual interest, if that will not reduce the original' amount of capital, and may also receive profits, if there be any. (1 R. S. 766, § 15.) When the special partner, acting in good faith, receives too much for interest , or profits, he mus make good his . share of the capital by restoring the deficiency. ■ (§ 16.) But;there is no pretence that this great inroad upon the capital was or could have been fairly made by way of paying interest or profits, and if the name of the special partner was included in the. conveyance of the mill with his .knowledge and consent, I"do not see' how he can avoid being charged as a general partner. It is true that the fifteenth section does not declare what consequences. shall follow the withdrawal of capital; hut the act is expressly forbidden, and it is one which runs, counter to the whole policy of the statute. ' Parties are only allowed to form a limited partnership upon certain specified “terms” and “conditions; ” (§ 1;) among the most important of which are, the contribution by the special partner of “a specific sum, as capital, to the common-stock,” (§ 2, 4,) and the keeping of that sum unimpaired, .so far as relates to any act of the special partner. (§ 15.) I see no way in which the policy of the law can be maintained, and the rights of third persons be effectually preserved, without hold: *315 ing that every intentional violation of the statute by the special partner will deprive him of that exemption from liability to creditors which he might otherwise claim.
Upon this branch of the case the judge charged the jury that the fact that Gould had, in connection with the Bussells, taken the title to the mill in his own name, did not render him liable as a general partner. Assuming the fact to be correctly stated, I could not agree to the law of the case as here laid down. Gould would be liable as a general partner upon the double ground that he had improperly interfered in transacting the business of the partnership, and had withdrawn a large portion ■of the money which he had previously contributed to the common stock. But the case was over-stated. Mr. Southwick is the only witness who gave any evidence directly bearing upon the question. He says, that when the co-partnership purchased the mill, the title to the same was taken in the name of all the •defendants. 1 find nothing here from which it can fairly be inferred that Gould had any thing to do with making the purchase, or in taking the conveyance. So far as appears, his name may have been included in the deed without his knowledge or consent; and I cannot think him liable for the wrong done by his co-partners, without showing that he participated in the act.
This is not a bill of exceptions, and on this branch of the case I see no sufficient reason for disturbing the verdict.
The only remaining question is upon the force which should be given to the affidavit of Bussell, that Gould had contributed seven thousand dollars of capital. The affidavit was a necessary part of the machinery for forming a limited partnership; (§ 7, 8;) and was properly given in evidence, along with the certificate and other papers, for the purpose of showing that the requirements of the statute had been complied with. As the papers were regular, and sufficient in point of form, they made out a prima facie case for the defendants that the partnership was a limited one; and threw the onus upon the plaintiffs of showing that something was wrong, before they could charge Gould as a general partner. (§ 8.) That they attempted to *316 do. They gave evidence tending to show that the certificate and affidavit contained a “ false statement” that Gould had paid in cash seven thousand dollars as his contribution to the common stock, (§ 2, 4, 7, 8,) when in point of fact he had paid nothing. The judge allowed the affidavit to go to the jury as opposing evidence upon the question whether the capital had in fact been contributed. In this we think he erred. The affidavit and Other papers made out a presumptive case that the partnership was a limited one. Gould started with the benefit of that presumption in his favor. But after evidence had been given tending to overthrow it, he could not bring in the affidavit as rebutting proof and treat Russell as a witness in his favor on the question of payment.
It was said at the bar, and the matter was probably discussed before the jury in the same way, that the affidavit of Russell must be met by the testimony of two witnesses, and that the jury must be prepared to convict him of perjury before they could find a verdict for the plaintiffs. We cannot subscribe to that doctrine. Such a rule would open a wide door for the commission of fraud, and would impose an intolerable hardship upon creditors. It is enough that the ax parte acts of the partners are allowed to have the effect of mailing out a presumptive case in their favor, without giving them the further privilege of being regarded as witnesses for each other.
New trial granted.