## JACKSON v. CORNELL and others.

The rule of equity is uniform and stringent, that the property of a co-partnership shall be applied to the partnership debts, to the exclusion of the creditors of the individual members of the firm ; and the creditors of the latter are to be first paid out of the separate effects of their debtor.

A general assignment of his separate property, made by an insolvent co-partner, which prefers the creditors of the firm to the exclusion of his own, is fraudulent and void as to the latter.

So held, where the insolvent partner executed an assignment to his co-partner, (the firm being in doubtful circumstances,) and directed a large debt of the co-partnership to be first paid out of the property assigned.

An assignment by a co-partnership, preferring the creditors of the individual co-partners to those of the firm, would be invalid against the latter, on the same principles.

The possession of real estate assigned, continuing in the assignor, is evidence of fraud.

Nov. 11, 1843 ; Feb. 29, 1844.

THE bill in this cause was filed by a judgment creditor of William Cornell, whose execution had been returned unsatisfied, for the purpose of setting aside an assignment of all his property, real and personal, made by him to Benjamin and Elijah Farrington, on the 9th of September, 1841.

Cornell and Benjamin Farrington were co-partners. The assignment directed the payment, in the first instance, of a debt due to B. F., and of the deficiency, if any there should be, on a debt of the co-partnership to Moses Taylor, which was also secured by Cornell's mortgage on his real estate.

The assignment was executed during the sitting of the court at which the complainant's suit at law was brought to trial, on the day before the verdict was taken, and it was recorded on the same day that the verdict was rendered.

On the 4th of September, 1841, Cornell executed the mortgage to Mr. Taylor, and two days after he executed another to Phebe Gwyer ; both of which the bill alleged to be fraudulent.

Other circumstances will be found stated in the opinion of the court.

*J. A. Lott,* for the complainant.

*A. D. Logan* and *A. Crist,* for the defendant B. Farrington.

*S. F. Cowdrey,* for the defendant Taylor.

THE ASSISTANT VICE-CHANCELLOR.—The mortgage exe-cuted to the defendant Taylor, in September, 1841, is assailed in the bill, on the ground that there was much less than $10,000 due to Taylor when it was given, that it was intended to cover the property of Cornell, and to defraud the complain-ant, and that the mortgage was usurious. All of these allega-tions are explicitly denied in the answer of Mr. Taylor, and there is no proof whatever to sustain either of them. As to him, therefore, the bill must be dismissed with costs.

The assignment made by Cornell to the two Farringtons, is alleged to be fraudulent, on various grounds.

1. The situation and doubtful solvency of the principal as-signee, B. Farrington. It does not appear that the other as-signee, E. Farrington, ever acted as such, or accepted the assignment, and the bill was taken as confessed against him as a non-resident defendant. I will therefore speak of B. Farring-ton as the assignee.

He was the partner of Cornell, and the bill charges that he was in doubtful circumstances as to his pecuniary means. The answer in substance admits this allegation, but it amounts to nothing, because it relates to the time of filing the bill, which is eight months after the date of the assignment.

2. The time and occasion of the assignment. It was exe-cuted on the same day that the complainant recovered his ver-dict in his action at law ; and thus it is argued, made in refer-ence to the verdict, and with a design to defeat the recovery.

This design is not necessarily to be inferred from the coinci-dence of dates. It is consistent with the legalized object of such assignments, the preference of other debts to the one which was about to be put into judgment.

3. The assignment devoted Cornell's individual property to

the payment of the partnership debts due from him and his assignee, in preference to his individual debts.

The first preferred debt is that to Moses Taylor, which is a partnership debt of the firm of Farrington and Cornell. The payment of whatever deficiency there may be in the mortgaged premises discharging that debt, and the payment of the sum of $740 to Farrington himself, are provided for by the assignment, before any other debts are to be paid.

The effect of the mortgage and assignment together, is to pay the whole $10,000 to Mr. Taylor out of Cornell's separate property, in preference to all of his individual creditors, except the assignee who comes in with Taylor on the liquidation of the deficiency. The mortgaged premises are Cornell's sole property, and what those fail to pay, the assignment first of all is to make good.

It is not denied that the rule of equity is uniform and stringent, that the partnership property of a firm shall all be applied to the partnership debts, to the exclusion of the creditors of the individual members of the firm; and that the creditors of the latter are to be first paid out of the separate effects of their debtor, before the partnership creditors can claim any thing. See *Wilder* v. *Keeler,* (3 Paige's R. 167;) *Egberts* v. *Wood,* (3 id. 517;) *Payne* v. *Matthews,* (6 id. 19;) *Hutchinson* v. *Smith,* (7 id. 26;) 1 Story's Eq. Jur. 625, § 675.

It is, however, contended that each partner, before a lien attaches by judgment, execution, or creditor's bill, has a right with his individual property, to give such preferences to and amongst his creditors, as he pleases, whether several or partnership creditors.

This is the principal question in the case, and it is one of great importance in commercial law. The defendant's proposition embraces the right, not merely to pay the money or deliver the property of the individual debtor to the partnership creditor in discharge of his claim; or to secure him with a specific parcel of individual property. But it extends to a general assignment of all the partner's separate estate. And if he may by such an assignment, prefer one partnership creditor to his own, there is no stopping short of

Jackson *v.* Cornell and others.

permitting him to prefer all the creditors of the firm to the entire exclusion of the individual creditors.

The question has not been decided so far as I can learn, and I regret that it has not fallen into abler hands for adjudication. Its decision is not to be avoided in this case, and I am not to shrink from it, although it be difficult and momentous.

I will first see what may be gathered from the cases in which the equitable rule has been discussed.

In *Egberts v. Woods,* before cited, the Chancellor said that upon the insolvency of a firm, its property is considered in equity, as a trust fund for the payment of the partnership creditors rateably. But either of the partners before the dissolution of the co-partnership, and all the partners afterwards, may apply the partnership funds to the payment of one creditor in preference to another.

Of course the converse of these propositions is equally true of the separate property of an insolvent member of the copartnership. And the right of every failing debtor to give preferences is unquestionable. *Egberts v. Woods,* therefore, does not aid us in our investigation. It does not say that the co-partners may prefer their individual to their joint debts, in a general assignment of the property of their firm.

*Payne v. Matthews,* cited above, contains the opinion of the Chancellor, that equity will not allow the creditors of a co-partnership, after exhausting the assets of the firm, to reach the separate property of a deceased partner to the injury of his own creditors, by using the name of the surviving partner, as being a creditor of the deceased, for the balance of such co-partnership debts.

In *Hutchinson v. Smith,* (7 Paige's R. 26,) the assignment of the effects of the firm, was attacked on the ground that an individual debt of one of the partners was preferred to debts owing by the firm. The Chancellor held that under the circumstances, it was a co-partnership debt. He said, if it were the private debt of the partner, "the assignment *so far as it provides for the payment of that debt,* before the payment of all the debts of the firm, could not certainly be sustained."

In *Robb v. Stephens,* (1 Clarke's Ch. R. 195,) Vice-Chan-

cellor Whittlesey, said, "one partner cannot assign the part-nership property for the payment of his individual debts, as that would work a wrong to the other partner," &c.

In *Bogert* v. *Haight*, (9 Paige's R. 297,) the assignment of the partnership property was made to pay the co-partnership debts, and there was an assignment by one of the partners of his own property to pay his private debts, and the surplus to go to the creditors of the firm, save the first preferred class. One question arose on this exception of the first class, and it was disposed of on a ground which I need not state here. And I only refer to the case as one in which the parties followed the equitable rule in making their assignments.

In the great case of *Wakeman* v. *Grover*, (4 Paige's R. 23; 35; S. C. on appeal, 11 Wend. 187,) one of the objections to the assignment, was the preference of a private debt of the co-partners in the appropriation of the co-partnership estate. The Chancellor, after noticing the point and its great importance, forbore to express any opinion upon it.

In the Court for the Correction of Errors, Sutherland, J., treated it in the same manner; while Senator Edmonds, after expressing his opinion that the debt alluded to was a co-partnership debt, proceeded to say that if it were otherwise, it did not follow that the assignment was fraudulent, or that the direction giving such a preference to a private debt, was any badge of fraud. He said also, that "such direction might, as to partnership property, be held void as to partnership creditors; but this would be on the principle that partnership property must first go to pay partnership debts, and not on the principle that it was made with a fraudulent intention, and therefore void."

In the case of *Deveau* v. *Fowler*, (2 Paige's R. 400,) the question was raised by one of the partners, against his co-partner, who after obtaining all the assets on an agreement to pay all the debts of the firm, became insolvent, and threatened to appropriate the assets to his own use. The court restrained him from so doing.

But in *Robb* v. *Stephens*, above cited, the vice-chancellor refused to extend this relief to a simple contract creditor of the co-partnership.

It will thus be seen that upon authority, the question before me remains open.

It is well settled that such a disposition of the separate property of the co-partner is inequitable. It is such an appropriation as this court will not suffer, when by reason of insolvency, the death of a partner, or any other cause, the subject is brought within its jurisdiction.

The vice-chancellor of the eighth circuit has declared that a partner cannot prefer his private debts with the assets of the co-partnership; and the converse of the rule must be equally true. And our learned chancellor has gone so far as to say that such an assignment, giving a preference to a private debt, could not be sustained, *so far as it provides for the payment of that debt.*

Let me pursue the consequences, in the case of the assignment of the effects of a co-partnership, giving a preference to a private debt.

*First,* It is inequitable, and therefore wrong.

In the next place, it cannot be sustained as to the debt so preferred. Now in what manner is the wrong which the parties have attempted to perpetrate on the creditors of the firm, to be prevented ?

Not by a mere appeal to the assignee, for he is to be governed by the express directions of the trust which he has undertaken to execute, and would not feel warranted in deviating from them, without the sanction of the court. Not by a bill by the creditors for the purpose of rectifying this particular grievance, while their demands still rest in simple contract. The case of *Robb* v. *Stephens,* decides that such a bill will not be sustained. And while the creditors are prosecuting their debts to judgment, so as to enable them to exhibit a bill under that decision, a pliant assignee of the debtor's own selection, would be very likely to forestall their proceedings by immediately paying off the obnoxious private debt so preferred.

The result of it is, that in order to remedy the evil, it will be necessary for the creditors to resort to this court, for an administration of the whole trust. And if they would not wait until such remedy would be fruitless, their resort must be made

immediately, and at the expense of the costs. For the assignee is entitled to a reasonable time to wind up his trust, and if the creditors speed him before he has had that time, it will be at their own costs and charges.

On such a bill, the court would doubtless direct the assignee to follow the rule of equity, and to postpone the private debt to all the joint debts.

In my opinion the courts have gone far enough in sustaining assignments, without proceeding to the length that they will sustain one so framed, that creditors, for whose benefit it professes to be made, are compelled to be at the expense of a chancery suit, to prevent its accomplishing gross injustice, and violating their manifest rights. We permit insolvent debtors to make assignments, selecting their own trustees, and preferring such creditors as they choose, so that one may receive his whole debt, while another equally meritorious, but less favored, loses his whole claim. Before resorting to this *ultimam rationem*, debtors are allowed to make similar preferences by actual payment in money or property, to such as they choose. We go still farther. While the debtor has control of his property, he may take $100 in his hand, and say to a ceditor for $1,000, take this and release the debt, or you shall receive nothing. I will assign, and place your debt in the last class, which is to be paid. If the creditor accepts the offer, and executes a release, it is valid, notwithstanding the moral coercion thus exercised over him.

But if the debtor, instead of making this use of his property, places it in the hands of trustees, with a proviso that it shall be paid only to such of his creditors as will accept it and release their debts; the law no longer tolerates the preference. It renders the whole transfer void.

I do not perceive why the same distinction should not prevail in reference to the point under consideration. Let the partner actually apply his own property as he thinks proper, while he administers it himself. But when he avails himself of the lenient provisions of our law, which enable him to prefer such creditors as he pleases, on making an assignment, and to select his own trustee; let us require him to avoid violating the plainest principles of equity. Let us prohibit him from vesting his

property upon a trust which this court frowns upon as unrighteous, and which when invoked, it must enjoin from being executed.

It appears to me that an assignment which attempts to carry out through trustees, a principle which this court will never permit any fiduciary to carry out, is a fraud upon the court, and upon the law which tolerates assignments. And that when such an instrument is made in a form that will inevitably require the interposition of this court in order to prevent gross wrong from resulting, and such wrong is the intended consequence of its provisions ; it is made in fraud of the law, and it should not be permitted to stand.

A party executing an assignment like this, does what he knows is not honest or conscientious. He knows that no court will sanction his directions, and that if invoked, equity will restrain their execution. He knows also that without the expensive resort by his creditors, to a court of equity, his inequitable and dishonest designs will be carried into complete effect. Is not this fraudulent?

It certainly is, in my judgment. I am prepared to say with Judge Van Ness, (*Hyslop* v. *Clark*, 14 Johns. 464,) that "an insolvent debtor has no right to place his property in such a situation as to prevent his creditors from taking it, under the process of a court of law, and to drive them into a court of equity where they must encounter great expense and delay, unless it be under very special circumstances, and for the purpose of honestly giving a preference to some of his creditors, or to cause a just distribution to be made among them all."

What I have said of an assignment by co-partners, preferring their several private debts, is equally true of an assignment by one partner preferring the debts of the co-partnership to the exclusion of his own. The principle of equity is equally operative in the one case as in the other.

If the preference is allowed for a single debt, it is equally valid for all debts. So that a co-partner in order to enrich his associate, if an assignment like this is to be upheld, may assign all his separate property to such associate, in trust to pay the assignor's half of the debts of the firm, and after those are paid,

to apply the residue to his private debts. In other words, he may turn his whole private property into the co-partnership, by means of one of these trusts for the benefit of his co-partner, leaving his private creditors penniless.

When the firm is so much insolvent, that all the individual estate of the insolvent co-partner will merely discharge his portion of the co-partnership debts, an assignment made by him giving the preference to the latter, is a direct gift of his property to the other partner.

Suppose, in this case, that Farrington and Cornell owed $5000 more than their joint means, and that the deficiency on Taylor's mortgage will be the same sum. Cornell, by preferring that deficiency to his own debts, pays out of his separate property, the whole deficit of the firm. He saves to his partner, Farrington, by taking it from his own creditors, $5000, which F., if solvent, would, according to the rule of equity, have to pay out of his own pocket. This is the direct and legitimate consequence of permitting assignments like the one in question. How the partnership actually stood, the case does not disclose. Cornell was then insolvent, and it appears that eight months afterwards, Farrington was in doubtful circumstances. The inference is quite strong that the co-partnership was not much better off than Cornell himself, when he made the assignment. At all events, the just inference from these facts, corroborates the presumption arising from the assignment itself, that it was designed to benefit Farrington, in respect of the co-partnership debts, to the prejudice of Cornell's individual creditors. And I have no hesitation in declaring that, in my opinion, the assignment was for this cause, void as against the latter.

4. The possession of the assigned property is said to have remained unchanged in Cornell.

The answer states that a great portion of the property assigned consisted of houses, &c., in Brooklyn, which were leased to workmen by floors, or rooms, and the rent of which was payable weekly and quarterly, thereby occasioning much difficulty in collecting; in view of which, and Cornell's

" greater conversance" as to the proper times of collecting, the assignee engaged him as his agent, at a small remuneration, to assist the assignee's book-keeper in collecting the rents. That Cornell duly accounted for the rents, and paid over all but $80, which he retained without the assignee's consent. Omitting what is not proved, and is not responsive, the evidence is, that Cornell collected the rents of the assigned property, and no reason is proved rebutting the presumption of fraud, which the law raises from that fact.

On the ground of the preference given to the co-partnership debt, and the unchanged possession of the real estate, I must hold that the assignment is fraudulent as against the complainant, and the same must be avoided as to him.

The bill having been taken as confessed by Phebe Gwyer, the decree will declare her mortgage to be fraudulent and void as against the complainant.