GREENWOOD & SKEEL *vs.* BRODHEAD and others.

Creditors at large, who have taken no steps to obtain a judgment and collect by execution are not entitled to file a complaint for the purpose of compelling the application of the proceeds of partnership property to the payment of the debts of the firm.

To authorize a person to demand the aid of the supreme court in enforcing an equitable application of his debtor's property, he must have a lien either legal or equitable, or must be in a situation to assert such a lien.

A partner has a lien on the whole property of the partnership for the balance finally due him, after the payment of partnership debts; and may file a bill in the first instance to compel a marshalling of the assets.

So a creditor must obtain a lien on the property, either legal or equitable, or be in a situation to assert one, before he can interfere to control it; if the property be real estate, by judgment; if personal by levy under execution; and if it be *choses in action*, by the return of an execution unsatisfied and the filing of a complaint.   Until such a lien is obtained, the partners have full power to make any *bona fide* sale of the property, which they may think proper.

DEMURRER to complaint.   The complaint alledged that in March, 1844, the defendants Brodhead & Oliver commenced business as merchants, at Woodbourne, Sullivan county, and continued to carry on the same until August, 1846, when they took one Skeel as a partner, who remained a partner until April, 1847; after which Brodhead & Oliver conducted the business until May, 1847, when they dissolved partnership as merchants, but still carried on the lumber business.   That Skeel left all the assets of the firm with his partners, who were liable for the debts.   That on the 29th of Nov. 1847, Oliver made an assignment of all his real and personal estate to his brother-in-law, J. Dubois Hasbrouck, and Henry Brodhead, jun. giving a priority in payment to his individual creditors, and especially to his brother, father, and brother-in-law, which preferred debts entirely absorbed the assigned property.   That previous to the 28th of August, 1847, the said firms purchased goods, &c. of the plaintiffs, and on that day the defendant C. W. Brodhead, by the name of Skeel, Oliver & Co. gave a firm note to the plaintiffs for $553,92, which was still due.   That Brodhead & Oliver

VOL. VIII.              75

were also indebted to Crum, Duyckinck & Van Doran, for goods, &c. to the amount of about $579, which debt had been assigned to the plaintiffs. That in May, 1844, when Brodhead & Oliver went into partnership the latter owned real estate whereon was an old saw mill; and it was agreed between them to rebuild the same, and also to erect a turning lathe and store house, &c. at their joint expense; and the firm were to enjoy the same for the space of ten years, after which the property was to revert to Oliver. That they accordingly rebuilt the mill and erected a store house, &c. at a cost of not far from $200, and as the plaintiffs believed, a part of the debt incurred to laborers, &c. thereby, was paid by goods sold by the plaintiffs. That Oliver made an assignment, as before stated, on the 29th of November, 1847, and the creditors of the firm were left without any security except the assets of the firm, which seemed to have been pretty much absorbed in the business, except the interest in said real estate, saw mill, &c. for the unexpired term. That Brodhead was unable to pay off and satisfy the debts of the firm, together with his individual debts, but that he claiming to represent the firm, since the assignment made by Oliver, had continued in the actual occupation and enjoyment of the mill, &c. and was still in the possession thereof. That the interest of the firm in said estate was of the yearly value of $200, or thereabouts, and ought to be applied to the liquidation of the partnership debts. That the assignees of Oliver sold the real estate at auction, and the defendant Peter Crispell, jun. became the purchaser, with a knowledge of the rights and interests of the firm, and of the rights of the creditors; that such interest was announced at the sale. That Oliver still remained in possession, and Crispell being of kin to him, the plaintiff believed the sale was colorable and for the benefit of Oliver, or his family; that Oliver furnished the purchase money, and that the whole object of the arrangement was to place the property beyond the reach of creditors. The complaint also alledged that Crispell had commenced a suit in the supreme court to recover possession of the said lot, &c.; and the plaintiffs claimed that he should be enjoined from further prosecuting it, until the expiration of ten

years; and that in the mean time the premises should be placed in the hands of a receiver for the benefit of the plaintiffs as creditors, or that the interest of the firm should be sold under an order of the court and the proceeds be applied to liquidate the debts due the plaintiffs; and the complaint concluded with a prayer for general relief.

To this complaint the defendants demurred.

*A. C. Niven*, for the plaintiffs.

*J. O. Linderman*, for the defendant Oliver.

*H. Brodhead*, for the other defendants.

PARKER, J.   The plaintiffs are creditors at large of C. W. Brodhead & Co.; and they have filed this complaint for the purpose of controlling the disposition of property alledged to belong to such firm, and of compelling the application of its proceeds in payment of the creditors of the firm.   No step has been taken to obtain a judgment on the plaintiffs' demand, nor do they pray, in the complaint, for such a judgment.

I suppose it is well settled that creditors at large are entitled to no such interposition of the powers of this court.   In *Wiggins* v. *Armstrong*, (2 *John. Ch. Rep.* 144,) it was held that the creditor must have completed his title at law, by judgment and execution, before he can question the disposition of the debtor's property.   This decision rested upon approved English authorities, and it has been repeatedly recognized as law, and followed in this state. (*Hendricks* v. *Robinson*, 2 *John. Ch. Rep.* 283.   *Brinckerhoof* v. *Brown*, 4 *Id.* 671.)   In *Kirby* v. *Shoemaker*, (3 *Barb. Ch. Rep.* 46,) the chancellor said, " It is only where neither the joint nor the separate creditors can reach the property of their debtors, so as to obtain satisfaction by execution at law, that the equitable principle is applied, of paying joint creditors out of the partnership property, and individual creditors out of the separate property of their debtors, when there is not enough to pay both."   This question was fully ex-

amined in *Robb* v. *Stevens*, (1 *Clarke's Ch. Rep.* 191,) where it was held that a creditor of a partnership firm, who had obtained a judgment against such firm, could not, before execution issued, sustain a bill for the partnership property and have it applied to the payment of the partnership debts. But that he must issue an execution upon his judgment, and file the ordinary creditor's bill. There is no doubt that joint creditors, under certain circumstances, have a right to priority of payment out of partnership property, in preference to the private creditors of any separate partner. ( *Wilder* v. *Keeler*, 3 *Paige*, 167. *Hale* v. *Hale*, 2 *McCord's Ch. Rep.* 302. *Story's Eq. Juris.* § 1253. 1 *Sand. Ch. Rep.* 348, *and cases there cited.*) This equity is generally to be worked out through the medium of the partners. (2 *Swanst. Rep.* 575. 1 *Ves.* 237, 455. 6 *Id.* 126. 3 *Mason*, 319. 5 *John. Ch. Rep.* 60. 4 *Ves.* 396. 15 *Id.* 557. 6 *Id.* 11 *J.* 11 *Id.* 4. 2 *Ves. & B.* 173.) Vice Chancellor Whittlesey says, " The rule seems to me to be, generally at least, for the benefit of the partner, who might be otherwise injured, and only incidentally for the benefit of creditors and others, as they can reach the partnership property through such partner." The partners have a right, as between themselves, to have the partnership property first applied to the discharge of the partnership debts. Story says, (*Eq. Juris.* § 1253,) "The creditors indeed have no lien—but they have something approaching to a lien ; that is, they have a right to sue at law, and by judgment and execution to obtain possession of the property, and in equity to follow it as a trust." In *Ex parte Ruffin*, (6 *Ves.* 119,) Lord Eldon held that joint creditors have no lien upon partnership effects, until such effects are taken into the custody of the law by due process. (*See also Ex parte Williams*, 11 *Ves.* 4; *Ex parte Rowlandson*, 2 *Ves. & B.* 173.)

I think the true rule is this. To authorize any person to demand the aid of this court in directing the application of partnership property, he must have a lien, either legal or equitable upon it, or must be in a situation to assert such a lien. One of the partners may file a bill in the first instance, against his copartners to compel an account and the marshalling of assets.

He does so by virtue of his *lien* upon the whole funds of the partnership, for the balance finally due him, after payment of the partnership debts. (*Story's Eq. Jur.* § 675.) So the creditor must proceed to obtain a *lien* on the property before he can interfere to control it. If it be real estate, he obtains the lien by judgment; if personal property liable to execution, by levy under such process; and if *choses in action*, by the return of an execution unsatisfied and filing a complaint. (*Corning* v. *White,* 2 *Paige,* 567. *Edmeston* v. *Lyde,* 1 *Id.* 637. *Wakeman* v. *Grover,* 4 *Id.* 23.) Until such lien is obtained the partners have full power to make any bona fide sale of the property they think proper. But when such lien exists the creditor may claim the aid of this court, to restrain the disposition of the property, by injunction, to have it placed in charge of a receiver, and to compel its equitable application. This law has not been changed by the code.

There is no necessity for examining the other grounds of demurrer. There must be judgment for the defendant, on the demurrer, with leave to the plaintiffs to amend on payment of costs.