## HEYNEMAN *et al. v.* DANNENBERG *et al.*

A Court of Equity will take jurisdiction of a bill for an injunction filed by attaching creditors of an insolvent, to restrain proceedings on execution against the property attached under a judgment against the debtor, in favor of another, alleged to have been obtained by fraud, where all the material allegations of the bill, except fraud, are admitted.

It would be requiring the creditors to do a vain act, to compel them to await their judgment at law and a return of execution, when it is admitted that the only effect would be a return of *nulla bona*, and the property attached would, in the mean time, have passed to innocent purchasers on execution sale under the judgment.

In such a case the books of the judgment creditor are not admissible as evidence for the defence, to show an entry of the original transaction on which the judgment is based, where the only predicate laid, is evidence that the judgment creditor was possessed of capital sufficient to have loaned the amount of the judgment to the judgment debtor.

APPEAL from the District Court of the Fourth Judicial District.

The plaintiffs, attaching creditors of Lewis Morris, filed a bill against him with Joseph Dannenberg and W. Thornburg, the sheriff of Yuba County, praying for a perpetual injunction restraining the defendants from proceeding to sell on execution certain property of Morris, under a judgment for $10,080, and costs, obtained by Dannenberg against Morris, a few days before the filing of the bill. The bill alleges that the property about to be sold on execution under said judgment, has been attached by the plaintiffs subsequent to an attachment in the action of Dannenberg. That the judgment was obtained by Dannen-

berg with intent to defraud the creditors of Morris, and that there was no actual indebtedness of Morris to Dannenberg, and that the property is about to be sold on execution under the direction of Dannenberg, for the benefit of Morris; that Morris is utterly insolvent and has no other property but that about to be sold under the execution.

Morris and Dannenberg filed separate answers, denying the fraud and alleging that Dannenberg's judgment was obtained on a note given for an actual *bona fide* debt, but admitting all the other material allegations of the complaint.

The plaintiffs called as witnesses J. S. Wynchell and E. Wolfe, who testified, under the exception of defendant Dannenberg, that they had been partners in business, up to a few months before the commencement of this action; that shortly before their dissolution, Morris proposed to them to buy a large quantity of goods on credit and then confess a judgment to a friend, or give him a note and have him bring suit thereon and attach their goods; naming Dannenberg as a safe person to accomplish this for them, and stating that he, Morris, desired to make ten thousand dollars, and did not care how he did it. They further testified that they refused to act upon the proposition, and also that during their partnership Dannenberg never had any dealings with the firm. The evidence for plaintiff further shows that the debts of Morris to plaintiffs were incurred very shortly before Dannenberg attached; and that six months before, Dannenberg had stated that he had very little means, and has asked the assistance of the firm to which Morris belonged, to start a business requiring only $2,000 or $3,000 capital. There was further evidence given, to identify Dannenberg with the whole transaction.

The defendant, Dannenberg, introduced his brother as a witness, who testified that the defendant D., was worth over $12,000. Defendants' counsel then offered the books of account of D., containing the original entries of his business transaction with Morris; which were objected to by plaintiffs, and excluded by the Court, the defendant D., excepting.

The evidence was submitted to a jury, who were directed to find a special verdict. They found that the note given by Morris to Dannenberg was without consideration, and that the judgment of the latter and the proceedings thereon were fraudulent as against the plaintiffs. A decree for a perpetual injunction, as prayed for in the bill, was thereupon entered. Defendant, Dannenberg, moved for a new trial, which was denied, and he appealed.

*Williams, Shafter & Park* for Appellant.

A Court of Equity has no jurisdiction to set aside a fraudulent judgment or conveyance, at the suit of a simple contract creditor, who has not prosecuted his claim to judgment and execution at law, nor jurisdiction to decree payment of such claim out of the property alleged to have been fraudulently conveyed, or fraudulently levied on under execution issued on such judgment. Angel *v.* Draper, 1 Vern., 399; Bach *v.*

Wastall, 1 P. W., 444; King *v.* Marrisal, 3 Atk., 192; Shirley *v.* Watts, 3 ib., 200; Edgill *v.* Haywood *et al.*, 3 ib., 352; Bennett *v.* Masquez, 2 Ves., 51; Wiggins *et als. v.* Armstrong *et als.*, 2 Johns. Chan., 144; Brinkerhoof *et als. v.* Brown *et als.*, 4 ib., 671; Williams *v.* Brown, 4 ib., 681; McDermott *et als. v.* Strong, 4 ib., 687; Speede *et als. v.* Davis & Hadu, 5 ib., 280; ib., 20 ib. Rep.; Swift *v.* Arents *et als.*, 4 Cal. Rep., 390; Greenway *v.* Thomas, 14 Ill. Rep., 271.

The judgment should be set aside and the cause remanded on the ground of errors of law accruing at the trial.

1. The testimony of Wynchell and Wolfe as to the declarations of Morris, were improperly admitted and left to the jury, there being no proof *prima facie*, of complicity between Morris and Dannenberg. G. Ev., 1 Vol., § 111.

2. The testimony of Kandler, Baught, Foreheimer and Scaller, to prove that Morris procured goods from them by fraudulent representations, was improperly admitted, for it had no tendency to prove that Dannenberg's note was without consideration.

3. The books of defendant Dannenberg, were improperly excluded.

The plaintiffs had put in testimony tending to prove that Dannenberg was worth only $2,000 at the time the note was executed. And it was proper for Dannenberg to meet this evidence.

Having proved by A. Dannenberg that, up to May, 1855, he had cleared $12,000 nett in his business in fact, he offered his original books, kept in his business as corroborative evidence. 1 G. Ev., § 116; Digby *v.* Stedman, 1 Esp., 328.

*McDougall, Aldrich & Sharp* for Respondents.

The questions presented by the record, are:

1st. The equitable jurisdiction of the Court over the subject matter.

2d. The right of these parties to any remedy by injunction.

3d. The right of the party to the remedy to the extent afforded by the decree.

The general question of jurisdiction cannot be better illustrated than by extracting from the standard authorities.

It should be observed, however, in the first instance, that our laws, (Rev. Stat., p. 202,) make every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with intent to hinder, delay or defraud creditors, *void*.

It is said we should wait until we had established our claims in judgment, but it appears that by permitting the fraudulent judgment to be satisfied, our lien upon the property and all rights therein would be lost, and we would be remediless.

It is respectfully submitted, however, that by the rule of the commentators, as well as by the whole course of adjudication without a single departure therefrom, the Court below upon the case made in the complaint had full and complete jurisdiction and right to give the remedy prayed for and administered by the decree. Story's Eq. Ju., 350;

Coke Institutes, 484; Story Ju., §§ 185–6; Story Eq. Ju., p. 884; ib., p. 885.

It will be remembered that the plaintiffs below base their right upon their being creditors, and having acquired a specific lien upon certain property by their attachments; and that against the same property and their liens, the fraud was asserted by means of a fraudulent judgment.

It was not denied in argument, that against this fraudulent judgment plaintiffs were without protection at law. Equity, then, must furnish it, and if in part, then perfectly.

It is now affirmed that when a lien upon property exists, either by attachment or execution, against which lien a fraud is set.up, that in such cases equity may relieve; and farther, that a simple contract creditor, if he has no remedy against his creditor at law and can reach equitable assets of his, not subject to execution, may, without appealing to the common law courts at all, in the first instance, ask a Court of Equity to liquidate his demand and satisfy the same out of the equitable assets.

A number of authorities were cited by counsel for appellant, some of them incorrectly, and none of them sustaining the position assumed.

It will be perceived that none of the authorities cited meet the question of the rights of an attachment creditor, and none pretend to fix a limit to the equitable power of a chancellor to relieve against fraud.

The creditor ordinarily must exhaust his remedy at law; that is, he must obtain judgment, execution, and return, and then show to the chancellor that he is at law remediless; but while this is a general rule, it has many exceptions, and every case is an exception, when to await such proceedings would leave the parties remediless as to a right they have established; and a fraud to defeat it entitles the party threatened to equitable aid. Smith v. Gettinger, 3 Geo., 140; Loomis v. Tifft et al., 16 Barbour S. C., 541; Falkner v. Freeman, 4 Sanf., 566, (N. Y. Chancery); Tappan v. Evans, 11 N. H., 311; Scott v. McMiller, 1 Littell, 302–5.

Upon a consideration of the law of this case, it cannot be denied but that, as attaching creditors, we had a right to set up the fact that we were such creditors, show the fraud, against which we had no remedy but by injunction, and ask the aid of the equitable powers of the Court.

If we had the right to exhibit a complaint and procure an injunction, defendants had a right to answer the complaint and seek its dissolution. Upon their answer, admitting all the matters alleged, why should not a final decree go.

The objection that the books of Dannenberg were rejected when introduced to show the profits made by Dannenberg in business, and to show that he had the ability to loan the money to Morris, has no force. Its propriety, under any circumstances, might be questioned, even although the proper foundation was laid; but upon examination it will be seen that no foundation at all was laid. The witness on the stand was competent to state all he knew, and did state all he knew. Nothing beyond this was competent. The rule, (if defendants had brought themselves within it,) that books may, upon certain preliminary

proof, be introduced to show a running account for merchandise against the debtor, has no application here. The debtor, by asking a credit, is supposed to put some faith in his creditor, and is treated as a privy to the books, but we are strangers to his books, and it was no question as to a running account of a merchant.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice TERRY concurred.

It is a general rule, that a Court of Equity will not take jurisdiction of a controversy, if the parties have an adequate remedy at law, and in accordance with this rule, Courts of Chancery have repeatedly refused to interfere at the instance of a creditor, and set aside fraudulent conveyances of the debtor's property, until the creditor has first exhausted his remedy by judgment, execution, and return of *nulla bona.*

For aught the Court might know, the claim might be illegal, or there might be sufficient property of the debtor to satisfy the judgment, aside from that fraudulently transferred. The modern decisions of some of the Courts of the United States, seem, however, to have relaxed the severity of the English rule, and in some cases it has been held that a creditor who has acquired a lien under the attachment laws of a State may apply to a Court of Chancery without first proceeding to judgment.

Without expressing any preference for the modern doctrine, we are satisfied that the facts and circumstances of this case take it out of the ancient rule. The debt and insolvency of the defendant, as well as every other material allegation of the bill, except that of fraud, are confessed by the answer; and it would be requiring the plaintiffs to do a vain act, if they should be compelled to await their judgment at law, and a return of execution, when it is acknowledged that the only effect would be a return of *nulla bona,* and that the property, which they have attached in the mean time, would have passed into the hands of *bona fide* purchasers under color of a judicial sale, and be lost to them forever. Fraud is one of the primary subjects of equity jurisdiction, and it is not to be supposed that a Court of Chancery would refuse to entertain jurisdiction in a case like the present, where the sole issue was one of fraud, and where by such refusal the fraud complained of would be most successfully consummated.

Several errors have been assigned upon the admission of testimony on the trial below, but on examination we are satisfied that Dannenberg was sufficiently identified with the transaction to render such evidence competent. The refusal to admit the books of Dannenberg, in my opinion, was proper, as I do not think there was a sufficient predicate laid; but even allowing they should have been admitted, it could not have warranted a different verdict, or changed our opinion, sitting as a Court of Chancery, upon the character of the transaction, which was, as it most fully appears from the testimony, a gross and outrageous conspiracy and swindle.

Judgment affirmed.