## CONROY & O'CONNOR v. WOODS et als.

THE lien of firm creditors is paramount to the lien of individual creditors.

And, where one partner buys out his copartners, agreeing to pay the debts of the firm, the partnership property remains bound for firm debts, just as before the sale. The lien of firm creditors attaching, must be preferred to the lien of an individual creditor of the remaining partner, attaching first.

A lien by attachment enables a creditor to file a creditor's bill, without waiting for judgment and execution.

Partners may make a *bona fide* sale of their property any time before their creditors acquire a lien; but such sale cannot include a sale directly or indirectly to one of the partners, with a stipulation, that he will pay the firm debts, there having been no credit given by the individual creditor on the strength of an apparent sole ownership in the vendee.

The fact that an individual creditor obtains judgment, issues execution, and levies on firm property, gives him no right to the property as against firm creditors, who have not yet obtained judgment.

In such case of conflict between the individual and firm creditors, equity has jurisdiction. No action lies against the Sheriff for levying the execution of the individual creditor, and a sale to different purchasers might result in a loss of the property.

APPEAL from the Twelfth District.

The facts are substantially stated by the Court. At the time of filing this suit, the Sheriff was about to sell the property in question, under the execution issued on the judgment of Woods against Bonny alone. The bill prays that plaintiffs have precedence over Woods and all others, on the ground that the property is partnership property; and also prays that the claim of Alison, as owner of a portion of said property, and the judgment of Woods, be declared fraudulent and void. Upon affidavit of the insolvency of the Sheriff and his bondsmen, the Court below ordered the proceeds of the sale to be deposited in Court, subject to the further order of the Court.

Woods demurred to the interventions filed, on the ground, that the intervenors had no interest in the success of either party, and did not state facts sufficient. Demurrer overruled.

The intervenors had attachment liens at the date of their interventions, and, before trial, had obtained judgment.

The case was tried before the Court, and a decree rendered, that the property was partnership property, and subject first to the judgments of plaintiffs and intervenors. Woods alone appeals.

*Geo. F. & W. H. Sharp*, for Appellant.

I. The Court below erred in overruling the demurrer of

Conroy *v.* Woods.

Woods. (*Mody* v. *Payne*, 2 Hill, 47, and note a; *Phillips* v. *Cook*, 2 John. Ch. 548; *Walsh* v. *Adams*, 24 Wend. 389; 3 Denio, 125—128; Prac. Act, Sec. 217—220; *Meyer* v. *Larkin*, 3 Cal. 403; *Nugent* v. *Locke*, 4 Id. 318; *Mason* v. *Tipton*, 4 Id. 276.)

II.   The pleadings and proofs do not show a case of equitable cognizance.   (Cases cited above.)

III.   Conceding that this action is one of equitable cognizance, when Woods' attachment was levied, this property, by the sale and delivery of the property itself, became the individual property of the debtor in that suit.   (*Ex parte* Ruffin, 6 Vesey, 127; *Marguand* v. *The N. Y. M. Co.* 17 John. 525; *Mody* v. *Payne*, 2 Id. 548; 3 Kent's Com. 65.)

IV.   If these plaintiffs had any lien whatever, it must be by force of the clause in the bill of sale; and they had none under it.   (Prac. Act, Sec. 120; Stat. 1850, 267, Sec. 15.)

V.   Woods advanced his money upon the strength of the property in question being the individual property of George Bonny, his debtor, and much of the money went to pay debts of the firm.

VI.   The claim of Alison to this identical property was good against the property, because they could not have invoked the want of a change of possession; and with full knowledge on this point, they allowed Woods to justify his taking under his attachment against E. B. Bonny, individually; hence, they are estopped from asserting the contrary, especially, after Woods had been put to the expense of defending this identical property, and after a return thereof is made to answer his debt alone.

VII.   The intervenors are interlopers in this action, without right or authority of law; at any rate, they are in no better position than the plaintiff.

VIII.   Their claims were included in the mortgage to Alison; consequently, the doctrine of election and *res adjudicatá* apply, so far as Woods is concerned.

*Cyril V. Grey* and *Joseph Simpson*, for Respondents.

This is a case of equitable cognizance.

The answers do not deny any of the material allegations of the complaint and interventions, which must, therefore he taken as true. (*Davy* v. *Bowman*, 8 Cal. 149; *Osborn* v. *Hendrickson*, 8 Id. 32; *Thompson* v. *Lee*, 8 Id. 275; *Humphreys* v. *McCall*, 9 Id. 59; *Curtis* v. *Richards*, 1d.; *Gerke* v. *Cal. St. Nav. Co.* Id. 215; *San Francisco Gas Co.* v. *The City*, Id. 453.)

The complaint and proofs show that the property in question was the partnership property of Bonny, Brooks & Moore, for the sale by Brooks and Moore operated only as a dissolution of the partnership as between the parties, leaving the property, as before, subject to the partnership debts. Bell became a tenant in common with E. B. Bonny, and could do nothing inconsistent with the primary duty of winding up the concern. (Kent's Com. 7th Ed. Side, 8, 59, 60, 63; Story on Part. Secs. 307, 308, 261, and Note; Collyer on Part. Sec. 110 and Note, 121, 125, 127, 166; *Marguand* v. *N. Y. Manuf'g Co.* 17 Johns. 525; *Necoll et al.* v. *Munford*, 4 Johns. Ch. 5, 22; *Rodriguez* v. *Hefferman*, 5 Id. 417, 428; *Crawsbrey* v. *Maule*, 1 Swanston, 507.)

Bell could not, and did not, transfer to E. B. Bonny (who knew all the facts) any higher or other right than he, Bell, possessed.

The partnership property could only become the individual property of one of the partners, and subject to his individual debts, after a notice of the dissolution of the partnership, and subsequent open and notorious possession of the goods by the surviving partner, and his carrying on the business in his own name and being trusted on the strength thereof. (*Ex parte Ruffin*, 6 Ves. 119; *Ex parte Till*, 10 Id. 347; *Ex parte Williams*, 11 Id. 3; La Collyer on Part. Sec. 884; Story on Part. Secs. 159——163, 308; Bissel on Part. 71; Gow. on Part. 2d Ed. 261; 3 Kent's Com. 7th Ed. Side, 8, 66, 7; *Johnson* v. *Totten et al.* 3 Cal. 347.)

The complaint and interventions set out and the proof, sustains two distinct grounds for the relief sought; either of which is sufficient, and will entitle plaintiff and intervenors to relief in a Court of Equity.

I. That the plaintiff and intervenors are partnership creditors of Bonny, Brooks & Moore, and having established a lien by attachment, followed by judgment and execution upon the partnership assets, they claim a preference over defendant, Woods,

who is an individual creditor of one of the partners, E. B. Bonny.

II.   That the judgment of Woods is fraudulent and intended to hinder, delay, and defraud, creditors.

Either of the grounds is sufficient to authorize the interference of a Court of Equity.   (1 Sto. Eq. Jur. Secs. 678, 1253, and cases cited; *Washburn* v. *Bank Bellows Falls,* 19 Vt. 278; *Place* v. *Sweetzer,* 16 Ohio, 132; *Snodgrass Appeal,* 13 Penn. 471; *Jackson* v. *Cornell,* 1 Sandf. Ch. 348; *Robb* v. *Steans,* 1 Clark's Ch. 191; *Chase* v. *Steele et al.* 1 Sandf. Ch. 348.)   A Court of Equity will also interfere in cases of fraud, even if founded on the express provisions of statutes, and especially to guard against the fraudulent acts of a debtor.   (Sto. Eq. Jur. Secs. 349, 377; *Heyneman* v. *Dannenberg,* 6 Cal. 376; *Adams* v. *Woods,* 8 Id. 156.)   And also interfere where the plaintiff has a remedy at law.   (*People* v. *Houghtaling,* 7 Cal. 348; *Heyneman* v. *Dannenberg,* 6 Id. 376.)   And especially to enjoin the fraudulent disposition of partnership property in favor of individual creditors of the separate partners.   (*Jackson* v. *Cornell,* 1 Sandf. Ch. 348; *Deveau* v. *Fowler,* 2 Paige's Ch. 400; *Topliff* v. *Vail,* Harrington's Ch. 340; *Candler* v. *Pettit,* 1 Paige's Ch. 168; *Heath* v. *Hand,* 1 Id. 329; *Eager et al.* v. *Price et al.* 2 Id. 333; Story on Part. Sec. 264.)   And, in this case, E. B. Bonny was only a Trustee, holding the property for the payment of the partnership debts, and a Court of Equity will interfere to enforce the trust in favor of the creditors.   (Sto. Eq. Jur. Sec. 1244; *Sedam* v. *Williams,* 4 McLean, 51; *Gray* v. *Thompson,* 1 Johns. Ch. 82; *Page* v. *Naglee,* 6 Cal. 241.)

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

Bill states that on the 22d of April, 1857, plaintiffs sued out attachment against Bonny, Brooks & Moore, a mercantile firm in San Francisco, and had it levied on certain goods; that shortly afterwards, plaintiffs got judgment in their suit, which has not been paid, and execution issued with directions to the Sheriff to levy on the property attached; that the debt of plaintiffs was for goods, due by this firm at and before the 9th of April, 1857, and this property attached had belonged to and been in possession of said firm; that about this last date, these defendants dissolved

partnership, by Brooks and Moore selling out to the defendant, Bell, who bought subject to the payment of the debts of the firm; that no notice was given of this dissolution to plaintiffs until the 16th of May, 1857; that Bell bought for Bonny, and afterwards transferred his rights to Bonny; that at the time of this sale, all these parties knew of this indebtedness to plaintiffs; that on the 10th of April, 1857, defendant, F. H. Woods, commenced a suit in this Court against E. Bonny, and attached the property as his individual property, and afterwards obtained judgment. Execution issued and levied upon the property and it was advertised for sale as Bonny's. The bill then charges various matters of fraud in the sale to Bonny, and in the note and suit of Woods and Bonny.

Several parties appeared as intervenors, claiming to be entitled to come in as judgment creditors of this firm, and alleging substantially the same facts as the plaintiffs. Woods demurred on several grounds, which will be noticed hereafter, and, the demurrer having been overruled, answered. The answer denies that the plaintiffs attached the property or any part of it, or took it in execution; also denies that on the 9th of April, 1857, the partnership of Bonny, Brooks & Moore existed, says it was dissolved on the 4th of April, 1857, the dissolution was notorious and plaintiffs had notice of it. On the 10th April, 1857, defendant commenced suit against Bonny, and attached property, recovered judgment, and caused property to be taken in execution. At this time defendant had no knowledge of the claim of the plaintiff; the property was that of Bonny, and in his possession, and defendant, by his attachment, acquired a lien on it. Defendant was, at the time of his suit, the sole owner of the note sued on by him, and that it was all justly due and owing to defendant by Bonny; of the amount, eleven hundred and thirty dollars, was a debt due from Bonny, Brooks & Moore; denies that he aided in bringing about the dissolution of the firm; and also all fraud or connection with any; or all knowledge of any trust or lien, or condition for benefit of creditors, in the sale to Bonny by the parties; and denies it to be the fact that it was so transferred; that one Alison brought suit for the property; that this defendant pleaded that the property was the individual property of Bonny and his attachment a lien on it; that the suit

was decided in favor of defendant; and that the plaintiffs had notice of these facts, and made no claim to the property; denies that Bonny, Brooks & Moore have not property sufficient to satisfy claim of plaintiffs.

A great deal of proof was taken, oral and documentary. The Court below found that the material allegations of the complaint were proven.

The ground upon which the learned Judge places his decree, in favor of the plaintiffs and intervenors, is, that the lien of the firm creditors of Bonny, Brooks & Moore is paramount to that of the individual creditor of Bonny. It has been seen that Bonny bought out the other two partners and agreed to pay the firm debts. We say he agreed to buy them out; for the mere disguise of this process—by means of the sale to Bell, and his transfer, a few days afterwards, to Bonny—is, when taken with the facts and the answer, too thin to permit us to doubt that Bell acted merely as the agent of Bonny in this transaction. Bonny then held the firm assets; and the question is, having got the title to them in this way, whether they stood anywise differently as respects the firm creditors than if the firm had continued? If the firm had continued, it is not disputed that the rights of the firm creditors would have been prior and paramount to those of an individual creditor; and it is not easy to see any substantial difference in respect to the principle we are considering, between one partner's buying out his associate's share, on agreement to pay the debts of the firm, and suffering the firm name to continue. This was partnership property bound for partnership debts when the firm was in existence, and it continued to be bound for those debts after the sale to this partner, especially when he assumed, as a part of the transaction, of purchase, the payment of those debts. Story on Partnership, Section 97, thus lays down the rule: "In short, as between the partners themselves, the debts and liabilities of the firm to creditors and third persons are a fund appropriated, in the first instance, to the discharge and payment of such debts and liabilities, and there is, properly speaking, as between them, a lien thereon, or at least an equity, which may be worked out through the partners in favor of the creditors, although it may not directly attach in the creditors by virtue of their original claims,

in all cases. Each partner also has a specific lien on the present and future property of the partnership, not only for the debts and liabilities due to third persons, but also for his amount or share of the capital, stock, and funds, and for all moneys, advanced by him for the use of the firm, and also for all debts due to the firm for moneys abstracted by any other partner from such stock and funds beyond his share. It follows from this principle, that if any partner takes the whole or a part of his share out of the partnership stock, the stock so taken, if identified, is applicable to the payment of what shall, upon an account taken, be found due from him to the partnership, before any of it can be applied to the payment of his debts, due to his own separate creditors; for such partner has an interest in the stock only to the amount of the ultimate balance due to him, as his share of the stock. The same rule will apply to any other property, into which the partnership property may have been converted, so far and so long as its original character and identity can be distinctly traced. Hence it may be stated, as a general corollary from the foregoing considerations, that no separate creditor of any partner can acquire any right, title, or interest, in the partnership stock, funds, or effects, by process or otherwise, merely in his character as such creditor, except for so much as belongs to that partner, as his share or balance, after all prior claims thereon are deducted and satisfied." (See, also, Story's Eq. Juris. Sec. 1253.)

In *Greenwood* v. *Brodhead*, (8 Barb. 594,) the rights of creditors in such a case are discussed. The Court say, there is no doubt that joint creditors can, under certain circumstances, have a right of priority of payment out of partnership property, in preference to the private creditors of any separate partner, and *Wilder* v. *Keeler*, 3 Paige, 167; *Hale* v. *Hale*, 2 McCord, Ch. 302; Story's Eq. Sec. 1253; 1 Sand. Ch. 348, are cited.

The section of Story's Equity referred to holds: "The creditors, indeed, have no lien, but they have something approaching to a lien; that is, they have a right to sue at law, and by judgment and execution to obtain possession of the property, and in equity to follow it as a trust." So it is said in 8 Barbour: "The creditor must proceed to obtain a lien on the property before he can interfere to control it. If it be real estate, he obtains the

lien by judgment; if personal property, liable to execution, by levy under process; and if choses in action, by the return of an execution unsatisfied after filing a complaint."

In this case, the plaintiff had, before the filing of his bill, a lien by attachment and a judgment. We see no necessity for the levy of an execution. It would have answered no beneficial purpose; it was not necessary to give a lien; that had already accrued from the levy of the attachment; and it was not necessary for a sale, for a sale was not desired. The intervenors also had attachments levied; that gave them a lien; and if they had waited for the filing of their bill until judgment was obtained, it might have been too late. At the time of the trial, they had obtained and produced their judgments. The authorities do not place the right to go into equity upon the ground that the plaintiffs must show themselves to be creditors by judgment; but they go on the ground that they must show a lien on the property; and this lien exists as well by the levy of an attachment as by execution.

It is true, it is said in 8 Barbour, " that until such lien is obtained, the partners have power to make any *bona fide* sale of the property they think proper. But when such lien exists, the creditor may claim the aid of the Court to restrain the disposition of the property by injunction, to have it placed in charge of a receiver, and to compel its equitable application." But we do not understand by the *bona fide* sale here spoken of, a sale, directly or indirectly, to one of the partners, accompanied with a stipulation that he shall pay the firm debts.

Indeed, this very question was decided in *Sedam* v. *Williams*, (4 McLean, C. C. R. 51.) But it scarcely needs authority to prove that if this equity existed against the three partners, or the firm property, when owned by the three, that it lost none of its force from the *mere fact* that the sole title to the property became lodged in the hands of one of them, no credit having been given by individual creditors on the strength of an apparent sole ownership in the vendee.

Woods seems to have had notice of these facts; and if he had not, the mere fact of his getting his separate judgment and issuing execution, and making a levy, gave him no title to this property as against the superior equity of these firm creditors.

41

2. We think that a Court of Equity has jurisdiction of this case. No action against the Sheriff would lie for a levy, and the property would, perhaps, be lost by a sale of it to different purchasers. (*Place* v. *Sweetzer*, 16 Ohio, 142; 19 Vermont, 286.)

The other points are not well taken.

Woods is the only Appellant here, and he can complain of no error not to his prejudice.

Decree affirmed.

See *Heyneman et al.* v. *Dannenberg et al.* 6 Cal. 376; *Scales* v. *Scott, ante.*