[S. F. No. 2539.   Department Two.—June 18, 1904.]

## EDWARD H. AIGELTINGER, Appellant, v. JACOB EINSTEIN et al., Respondents.

FRAUDULENT CONVEYANCE—ACTION BY ATTACHING CREDITOR—JUDGMENT AND EXECUTION REQUIRED.—A creditor who has merely levied an attachment upon real property as the property of his debtor, subsequent to the date of an alleged fraudulent conveyance made thereof by the debtor to his wife, cannot prior to the rendition of a judgment against the husband maintain an action in equity to set aside the conveyance.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Bahrs, Judge.

The facts are stated in the opinion.

Waldemar J. Tuska, for Appellant.

An attaching creditor may sue in equity to set aside a fraudulent conveyance. (Civ. Code, secs. 3439, 3441; *Case* v. *Beauregard*, 101 U. S. 688, 690; *Heyneman* v. *Dannenberg*, 6 Cal. 376;[1] *Scales* v. *Scott*, 13 Cal. 76; *Conroy* v. *Woods*, 13 Cal. 633;[2] *Bickerstaff* v. *Doub*, 19 Cal. 109, 113;[3] *Castle* v. *Bader*, 23 Cal. 76, 79; *Miller* v. *Kehoe*, 107 Cal. 340; *Klous* v. *Hennessey*, 13 R. I. 332; *Adams* v. *Paige*, 7 Pick. 542; *Hall* v. *Eaton*, 25 Vt. 458; *Hull* v. *Stryker*, 27 N. Y. 596, 601; *Frost* v. *Mott*, 34 N. Y. 253.)

---

[1] 65 Am. Dec. 519.      [3] 79 Am. Dec. 204.
[2] 73 Am. Dec. 605.

Myer Jacobs, and Arthur J. Dannenbaum, for Respondents.

A judgment is a prerequisite to a creditor's bill in such a case as this. (*McMinn* v. *Whelan,* 27 Cal. 300; *Hills* v. *Sherwood,* 48 Cal. 386; *Forde* v. *Exempt Fire Co.,* 50 Cal. 299; *Mesmer* v. *Jenkins,* 61 Cal. 153; *Ohm* v. *Superior Court,* 85 Cal. 545;[1] *Brown* v. *Campbell,* 100 Cal. 635;[2] *Field* v. *Andrada,* 106 Cal. 107; *Tennent* v. *Battey,* 18 Kan. 324; Bump on Fraudulent Conveyances, 4th ed., sec. 536; 3 Pomeroy's Equity Jurisprudence, sec. 1415; Wait on Fraudulent Conveyances, sec. 73; Chancellor Kent, in *Wiggins* v. *Armstrong,* 2 John. Ch. 144; *Adsit* v. *Butler,* 87 N. Y. 585; *Union Trust Co.* v. *Boker,* 89 Fed. 6; *Grenell* v. *Ferry,* 110 Mich. 262; *Jenks* v. *Metzger,* 114 Mich. 48; *State Bank* v. *Chatten,* 59 Kan. 303; *Metzger* v. *Bostwick,* 31 Barb. 390; *Massey* v. *Gorton,* 12 Minn. 145;[3] *First National Bank* v. *Randall,* 20 R. I. 319;[4] *Dunham* v. *Cox,* 10 N. J. Eq. 437;[5] *Ladd* v. *Judson,* 174 Ill. 344;[6] *Cotes* v. *Bennett,* 183 Ill. 82.)

CHIPMAN, C.—Creditor's bill. Defendants had judgment on demurrer to the sufficiency of the complaint from which plaintiff appeals. The complaint alleges that defendants are husband and wife; that in March, 1899, Jacob conveyed to his wife, Delphine, without any consideration paid therefor, the land in question for the purpose of avoiding the then existing claims of his creditors, among them the plaintiff, of which purpose his wife had full knowledge when she took the deed; that the money loaned by plaintiff to Jacob was used by the latter, and also was used for the benefit of a certain partnership of which Jacob was a member, and of which, at the commencement of the suit, he was the sole surviving member; that said copartnership was indebted in a large sum to divers creditors, and was unable to pay its liabilities, and was insolvent; that Jacob had no property that was exempt from execution other than the land in question. Subsequently, January 30, 1900, plaintiff brought his action in the superior court against defendant Jacob, and regularly sued out a writ of attachment, which was, on February 2, 1900, duly levied on the said land as the property of Jacob, but as

---

[1] 20 Am. St. Rep. 245.

[2] 38 Am. St. Rep. 314.

[3] 90 Am. Dec. 287.

[4] 78 Am. St. Rep. 867.

[5] 64 Am. Dec. 460.

[6] 66 Am. St. Rep. 267, and note.

standing in the name of said defendant Delphine, and said levy is now in full force and effect.

Plaintiff's prayer is, that the conveyance referred to be declared void; that it be adjudged that he has a good and substantial lien upon the real property described in the complaint; and that he have such further relief as is proper in the premises.

The only ground on which defendants claim that the demurrer was rightly sustained is, that on the case made in the complaint judgment was a necessary prerequisite to the action to set aside the alleged fraudulent transfer. No other question is presented by the briefs.

Mr. Pomeroy says: "It is a necessary result from the whole theory of the creditors' suits that jurisdiction in equity will not be entertained where there is a remedy at law. The general rule is, therefore, that a judgment must be obtained, and certain steps taken towards enforcing or perfecting such judgment, before a party is entitled to institute a suit of this character. In this there is a uniformity of opinion, but the difficulty arises in determining exactly how far a plaintiff should proceed after he had obtained his judgment." (3 Pomeroy's Equity Jurisprudence, sec. 1415.)

The courts, however, all agree and have held that there are exceptions to the general rule stated above. Whether the case of an attaching creditor who has by his writ secured a lien on the property, but as yet has no judgment, comes within the exception is a question about which the decisions are not harmonious. Our statute reads as follows: "A creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement by legal process of his right to take the property affected by the transfer or obligation.

Appellant claims that it has been decided by this court that an attaching creditor could before judgment have his bill in equity to set aside the fraudulent conveyance of the attached property without waiting judgment. (Citing *Heyneman* v. *Dannenberg*, 6 Cal. 376;[1] *Scales* v. *Scott*, 13 Cal. 76; *Conroy* v. *Woods*, 13 Cal. 633;[2] *Bickerstaff* v. *Doub*, 19 Cal. 109;[3] *Castle* v. *Bader*, 23 Cal. 76.) It becomes necessary to examine

[1] 65 Am. Dec. 519.                    [3] 79 Am. Dec. 204.
[2] 73 Am. Dec. 605.

these decisions of this court. In *Heyneman* v. *Dannenberg,* the action was by an attaching creditor to enjoin the sheriff from selling property on execution under a judgment alleged to have been fraudulently obtained by Dannenberg against the debtor (Morris) a few days before the filing of the bill. Plaintiff's attachment was subsequent to the execution. All the facts alleged in the bill, except the fraud, were admitted in the answer.

The court, after stating the general rule to be as we have shown, said: "The modern decisions of some courts of the United States seem, however, to have relaxed the severity of the English rule, and in some cases it has been held that a creditor who has acquired a lien under the attachment laws of a state may apply to a court of chancery without first proceeding to judgment. Without expressing any preference for the modern doctrine, we are satisfied that the facts and circumstances of this case take it out of the ancient rule." The reason given was that unless the sale could be stayed "the property which they (plaintiffs) have attached in the mean time would have passed into the hands of *bona fide* purchasers under color of a judicial sale, and be lost to them forever." The court further said that the jurisdiction could not be refused in a case like the present, where the sole issue was one of fraud, and where by such refusal the fraud complained of would be most successfully consummated. *Scales* v. *Scott,* 13 Cal. 76, was a similar case, and *Heyneman* v. *Dannenberg* was followed. In both cases personal property was attached as we infer. In *Conroy* v. *Woods,* 13 Cal. 633,[1] the court said: "The authorities do not place the right to go into equity upon the ground that plaintiffs must show themselves to be creditors by judgment; but they go on the ground that they must show a lien on the property; and this lien exists as well by the levy of an attachment as by execution." Thes observations must be read in the light of the facts disclosed, and they show that the court did not question the general rule, but found sufficient circumstances not unlike those in the cases last above noted, to bring the case within the exceptions to the rule. *Conroy* v. *Woods,* 13 Cal. 633,[1] does not support the doctrine on which appellant relies. Besides, it appears that the plaintiff and interveners in that action had

[1] 73 Am. Dec. 605.

not only attachment liens, but also had judgments.  The point decided in *Bickerstaff* v. *Doub,* 19 Cal. 109,[1] was, that where the property is in the possession of a stranger to the writ, claiming it as his own by virtue of a transfer to him from the debtor, which would prevent the latter himself from retaking the possession, the officer must produce not only the writ but the judgment which authorizes its issuance.  And the court then states the rule as we have given it *supra,* adding, "or has some process regularly issued, as in the case of an attachment authorizing a seizure of the property."  (Citing *Thornburgh* v. *Hand,* 7 Cal. 554.)  In the latter case the vendee of certain personal property of the debtor brought replevin against the sheriff, who sought to justify under a writ of attachment by which he had seized the property.  The question involved was whether the officer could justify by simply producing the writ and proving the existence of the debt, or whether he must not also show all the proceedings on which the writ was based, and the court held that he must show the regularity of all the proceedings which were the basis of the writ.  As this was not shown, the justification failed.  It is, however, fairly inferable from the opinion that it would have been held sufficient had the sheriff shown the proceedings to be regular and that the writ was properly issued.  Without affirming or denying this view of the question, where an officer seeks to justify his seizure and possession of property, we do not think the doctrine supported by reason or the weight of authority when applied to a creditor at large who attacks the transfer, armed alone with a writ of attachment duly served and an alleged indebtedness not yet brought to judgment, and in the absence of any circumstances showing a necessity for equitable interposition, in order to preserve the property from transfer to innocent third persons.  In the concluding paragraph of the opinion in *Bickerstaff* v. *Doub,* 19 Cal. 109,[1] the court said: "Unless the transfer were made to hinder, delay, or defraud creditors, the sheriff could not question its validity, and not even then without first producing the judgment under which the execution he held was issued."  The remaining case relied on by appellant—*Castle* v. *Bader,* 23 Cal. 76—was decided on the ground that the facts constituting the fraud were not sufficiently alleged or found.  It was also

[1] 79 Am. Dec. 204.

said by the court that the complaint was insufficient in that it does not aver that plaintiffs have acquired any lien on the property they seek to have applied in satisfaction of their debts, or that they have obtained judgment on their debts on which execution has been issued, and return no property found. Upon a careful examination of these early cases, we do not find that they necessarily involved or decided the question we now have before us. In *McMinn* v. *Whelan,* 27 Cal. 300, the defendants sought, among other defenses, to attack the conveyance in question. They had a judgment, which, however, was held by the court to be void, and they then claimed the right to attack the conveyance by reason of an attachment levied on the property. The court said: "If the defendant O'Connor had a lien on the premises by reason of the attachment, that lien could not be rendered effectual for the purpose of impeaching the conveyance to the plaintiff until judgment be obtained in the suit of Gleason *v.* Maume, and it is possible that no such judgment will ever be obtained. If the defendant O'Connor, as the assignee of Gleason, was, at the commencement of this action, and when it was tried, the creditor of Matthew Maume, he was simply a creditor at large without a judgment, and hence not in a position to maintain an action by answer in the nature of a cross-bill in equity to set aside the conveyance made to plaintiff." The case of *Blanc* v. *Paymaster Mining Co.,* 95 Cal. 524,[1] furnishes an exception to the general rule, and on the peculiar facts alleged and shown, a fraudulent conveyance was set aside without judgment first obtained against the fraudulent vendor—debtor. In *Miller* v. *Kehoe,* 107 Cal. 340, the debtor had commenced proceedings in insolvency, which prevented plaintiffs from obtaining judgments against him. The action to set aside the alleged fraudulent conveyance to his wife, brought on behalf of all the creditors, and asking that when the assignee in insolvency should be appointed that he be made a party, was sustained. *Murray* v. *Murray,* 115 Cal. 266,[2] was also by its peculiar facts taken out of the operation of the general rule.

Section 1589 of the Code of Civil Procedure gives an executor or administrator authority to bring an action to set aside the fraudulent conveyance of his testate or intestate for the

---

[1] 29 Am. St. Rep. 149.          [2] 56 Am. St. Rep. 907.

benefit of creditors, ''when there is a deficiency of assets in the hands of the executor or administrator.'' It has been held under this section that it must appear,—1. That there are creditors to be paid; 2. That there is an insufficiency of assets in the hands of the administrator to meet their demands; and 3. The claims of the creditors must be evidenced by a judgment obtained in this state, or they must have been allowed by the administrator or executor, which is the equivalent of a judgment. (*Forde* v. *Exempt Fire Co.*, 50 Cal. 299; *Ohm* v. *Superior Court*, 85 Cal. 545;[1] *Field* v. *Andrada*, 106 Cal. 107.) It may be said that these cases do not reach the precise point now before us. But if general creditors of an estate, as well as the administrator, may not bring their action against the fraudulent vendee of the deceased debtor without first having their claims allowed, the principle involved would seem to have some application. The question will be found discussed and the authorities on both sides collated in Wait on Fraudulent Conveyances, sec. 81; Bump on Fraudulent Conveyances, sec. 538; Pomeroy's Equity Jurisprudence, sec. 2185; and 5 Ency. of Pl. and Prac., p. 525. Among the decisions supporting the view taken by the lower court, we find the reasoning of Mr. Justice Brewer in *Tennent* v. *Battey*, 18 Kan. 324, entirely satisfactory. Briefly summarized, the reasons given were: Though the attachment is a specific lien, it is a lien of very uncertain tenure. It may be defeated by dissolution on motion, or by a judgment in favor of defendants on the merits of the claim. Suits by attachment are common, and the writ issues without any order of the court and on the affidavit of the creditor alone, alleging any one of the statutory grounds. No advantage would inure to the creditor, except in the mere matter of time, by sustaining the equitable action. The seizure of the officer preserves the lien as against all changes and transfers, and everything the debtor or his assignee could do subsequent thereto. Except as to perishable property and property whose keeping is expensive, no sale can be ordered until after judgment, and for such property there would be no advantage to sustain an action like this. It might happen that the attention of the court would be occupied in useless litigation because the attachment might be dissolved before judgment, which would end the lien and

[1] 20 Am. St. Rep. 245.

also the action to set aside the conveyance. The claim of the creditor should be certain before he can concern himself with the debtor's frauds, and it cannot be made certain except by judgment. A claim that is merely asserted ought not to be sufficient. It may be conceded that an officer has the right to defend his possession of the attached property, and often the defendant's acts may be inquired into; but it does not seem to follow that because an officer may do this, the plaintiff may prosecute an independent action, not to preserve the possession, but to clear up the title. When the claim has become certain he may inquire into the title. Possession may be preserved to preserve the attachment lien, but nothing more is necessary until the claim is made certain.

It seems to us that there is no satisfactory answer to this view of the question. It does not appear from the complaint that there is any danger of plaintiff's lien being lost. Plaintiff has no right under his attachment beyond that of using such measures as may be necessary to preserve his security until he can reduce his claim to judgment; the attachment is but a provisional remedy that can avail nothing beyond fixing a lien on the property pending the inquiry into the merits of the claim. We do not think the plaintiff should have the right to harass third parties with litigation that may prove fruitless, in efforts to remove obstructions to the sale of the property, until he has first established his right to have a sale. There is no hardship in enforcing such a rule, while great hardship and needless annoyance might ensue upon the adoption of the rule for which plaintiff contends.

Turning to our statute, *supra,* can it be said in the present case, that the alleged fraud "obstructs the enforcement, by legal process of his (the creditor's) right to take the property affected by the transfer"? Plaintiff has his lien on the land secured against the whole world, and he is entitled to no other legal process until he has his judgment. When he has judgment, he then has his execution, but as the transfer would obstruct the sale under the execution or "legal process," he may then have the obstruction removed, should there be no other property of the debtor sufficient to meet the demand, which latter fact may appear by return of the execution, *nulla bona,* or may appear by the admission of the allegation in the complaint that the debtor has no property

subject to execution except the property in question, or that he is insolvent.

It is advised that the judgment be affirmed.

Harrison, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

McFarland, J., Lorigan, J., Henshaw, J.