[Civ. No. 3391. Third Appellate District.—February 2, 1928.]

DELANEY PRODUCING & REFINING CO. (a Corporation), Appellant, v. CRYSTAL PETROLEUM PRODUCTS CO. (a Corporation) et al., Defendants; THOMAS C. JOB, Respondent.

Robert M. Pease for Appellant.

Romaine L. Hogan and Ovila N. Normandin for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment of dismissal as to the co-defendant Thomas C. Job, entered upon failure of the plaintiff to amend his complaint after a demurrer had been sustained for failure to state facts sufficient to constitute a cause of action.

An action in *assumpsit* was brought against the defendant Crystal Petroleum Products Corporation for the value of certain petroleum products alleged to have been sold and delivered. This suit for the value of merchandise sold, was combined with an effort to allege facts constituting an equitable action based upon a demand under the "trust fund doctrine" to reclaim alleged assets belonging to the defendant corporation "for the benefit of plaintiff and all other creditors similarly situated." Plaintiff sought to accomplish this purpose by applying for the appointment of a receiver to take charge of the assets of the corporation, and by an effort to procure a decree of court declaring a certain assignment of lease and option to purchase real property, which were held by the defendant Thomas C. Job, to be a mortgage, and praying that the equity therein be held by said Job as a trustee for the benefit of the creditors and stockholders of said defendant corporation. The directors of the corporation were not parties to the action. The plaintiff's claim had not been reduced to the form of a judgment, nor had any attempt been previously made by the plaintiff to exhaust its legal remedies. As a mere creditor, he had no lien upon the corporation property.

The complaint alleged that the plaintiff and defendant Crystal Petroleum Products Corporation were duly organized corporations with their principal places of business at Los Angeles; that the defendant corporation was indebted to plaintiff for merchandise sold in the sum of $16,513; that the defendant corporation was organized for the purpose of conducting an oil-refining business, and to manufacture gasoline and petroleum products; that said defend-

ant corporation had sold to several hundred individuals the stock of said corporation, of the aggregate par value of $878,370, and had borrowed money and incurred indebtedness represented by both secured and unsecured accounts in the sum of $212,000; that the assets of said defendant corporation were of uncertain value, consisting of the manufacturing plant and other property, and upon information and belief it was alleged that the assets did not exceed the sum of $75,000, and that the corporation defendant was therefore insolvent and had ceased active business operations. It was further alleged that practically the only tangible assets of the corporation consisted of a certain lease and option to purchase twenty acres of land upon which the manufacturing plant of the corporation was constructed; that this option provided for the purchase of said land at the agreed sum of $1,000 per acre, while the actual value of said land was alleged to be $2,500 per acre; that said lease and option depended upon the payment of regular monthly rent therefor; that said lease and option had been hypothecated to the defendant Job as security for the payment of an indebtedness of $35,000 owing to him from the defendant corporation, which was due and unpaid; that the defendant Job had notified the defendant corporation that unless said indebtedness was paid·before October 29, 1924, the lien upon said lease would be foreclosed. It was alleged that it was therefore necessary to institute this action to reclaim and preserve the interest of the defendant corporation in said lease and option, and to thus prevent a transfer thereof to some innocent purchaser; that said lease and option is of the value of $65,000, and that after demand the "defendant corporation by its officers and board of directors refused and still fails and refuses to claim or exercise ownership . . . over said option, and thereby is depriving the plaintiff and other creditors . . . of the principal fund or source from which said unsecured liabilities . . . may be paid." It was further alleged that the manufacturing plant of said defendant corporation was operated for only a few months, and then ceased to operate, and that ever since that time it stood and still remains idle and unproductive, and that the defendant corporation was insolvent. The prayer of the complaint demands judgment against the defendant corporation for the sum of $16,513; that a de-

cree be rendered declaring that the defendant Job holds said assigned lease and option as a mortgage, in trust for the defendant corporation and its creditors, and that a receiver be appointed to take charge of the property of said corporation, and preserve and disburse its assets for the benefit of its creditors and stockholders.

Clearly, this .complaint states a good cause of action against the defendant corporation for merchandise sold and delivered. But this defendant suffered default, and is not involved in this appeal. By means of this action plaintiff seeks to discover assets belonging to the defendant corporation in the hands of Job, to appoint a receiver and oust the directors, and assume the management of the corporation business and procure a distribution of the assets among its creditors, without having first reduced its creditor's claim to a judgment, and without making the legally constituted directors of the corporation parties to the action. Equity has no such jurisdiction. We are therefore of the opinion that the demurrer was properly sustained.

The appellant contends that the trial court erred in dismissing the action against the defendant Job, claiming that pursuant to the "trust fund doctrine" a creditor holds a lien upon the assets of an insolvent corporation and may maintain an action to reclaim property belonging to a corporation, to which it fails and neglects to assert title.

It will be observed that while it is alleged that the defendant corporation is insolvent, it appears from the complaint that stock had been sold of the value of $878,370, and that the total indebtedness was but $210,000. The value of the manufacturing plant and other assets is not given. The assignment of the lease and option was made to the defendant Job for a valid existing debt of the corporation. No actual fraud is alleged. While it is stated that the manufacturing plant had ceased operations and was inactive and unproductive, it appears that there was a legally constituted board of directors in existence, whose lawful duty it was to assume charge of the affairs of the corporation and liquidate its obligations. No inability of, or dissensions among the members of the board were alleged. A mere failure was charged on the part of the board to assert a claim to a questionable asset of the corporation.

■ A creditor's suit in equity will not lie until his claim has been reduced to a judgment and his legal remedies have been exhausted. (*Roberts* v. *Buckingham*, 172 Cal. 458 [156 Pac. 1018]; 7 Cal. Jur. 793, sec. 6; 8 R. C. L. 19, secs. 23, 24; 4 Pomeroy's Equity Jurisprudence, 4th ed., 3355, sec. 1415, p. 3602, sec. 1533.) In 4 Pomeroy's Equity Jurisprudence 3602, section 1533, it is said: "It is almost the universal rule that a creditor's bill, whether to set aside a fraudulent transfer or to reach equitable assets, will not lie in behalf of mere general creditors who have not prosecuted their claims to judgment, nor in any other manner acquired a lien upon the debtor's property." At page 3611 of the same volume it is said: "As a rule of equity practice, the courts are very reluctant to appoint receivers of the property of corporations, upon the idea that it is a practical displacement of the board of directors. It is an assumption of the function of the directors. It displaces the board of managers placed there by the stockholders, . . . and before the court will take charge of the corporation and thus displace its chosen directors and managers, it ought to have the clearest evidence of the absolute necessity for such extraordinary action for the protection of the creditors, stockholders, and all parties concerned. It is no slight matter for a court of chancery to lay its hand upon large business enterprises, take them out of the control of capacity and experience, and charge them with expenses and commissions" incident to the appointment of a receiver. In effect, the appointment of a receiver, upon the application of a creditor is tantamount to the dissolution of a corporation. (*Fischer* v. *Superior Court*, 110 Cal. 129 [42 Pac. 561].) "It is well settled, with scarcely a dissenting voice, that in the absence of express statutory authority, a court of equity has no power to dissolve a corporation, or wind up its affairs or sequester its property." (4 Pomeroy's Equity Jurisprudence 3615, sec. 1540; *Boyle* v. *Superior Court*, 176 Cal. 671 [L. R. A. 1918D, 226, 170 Pac. 1140]; *Lieberman* v. *Superior Court*, 72 Cal. App. 18, 36 [236 Pac. 570].) ■ It is the settled law of California that a court of equity has no power to appoint a receiver for a corporation, upon the application of a mere creditor, until after he has first reduced his claim to a judgment and exhausted his legal remedies, for the reason that this

would amount to an usurpation of the powers of the directors, and a virtual dissolution of the corporation. (*La Société Francaise, etc.,* v. *District Court,* 53 Cal. 495; *Smith* v. *Superior Court,* 97 Cal. 348 [32 Pac. 322]; *Fischer* v. *Superior Court,* 110 Cal. 129, 141 [42 Pac. 561]; *Murray* v. *Superior Court,* 129 Cal. 628 [62 Pac. 191]; *Elliott* v. *Superior Court,* 168 Cal. 727 [145 Pac. 101].)

In the French Bank case above cited a receiver was appointed upon the complaint of a creditor for money expended in behalf of the corporation. Similar to the instant case, it was further alleged that the corporation was insolvent; that the bank commissioners had examined the bank and so reported; that its liabilities exceeded its assets to the amount of $800,000; that through improper conduct of the manager of the corporation, $700,000 of its assets had been improperly expended, and that there was grave danger of its control falling into the hands of designing and irresponsible persons who would dissipate the funds and bankrupt the corporation. On appeal the order appointing the receiver was vacated as an unwarranted exercise of equitable jurisdiction. Chief Justice Wallace, writing the opinion, said: "There is no jurisdiction vested in courts of equity to appoint a receiver of the property of a corporation in a suit prosecuted by a private party. This is only to say that there is no jurisdiction vested in these courts in such a case to dissolve a corporation; for the power of a receiver, when put in motion, of necessity supersedes the corporate power. It necessarily displaces the corporate management and substitutes its own, and assumes . . . to do all and everything necessary . . . to protect the rights of the creditors and depositors. . . . It is well settled that a court of equity, as such, has no jurisdiction over corporate bodies for the purpose of restraining their operations, or winding up their concerns. We do not find that any such power has ever been exercised in the absence of a statute conferring the jurisdiction. Of course it is not to be doubted that the trustees of a corporation . . . are subject to the control of courts of equity. . . . But even in such a proceeding as that, *the trustees must of course be made parties defendant.* . . . There is no inherent power in . . . courts of equity, to appoint a receiver in such a case as that presented by this complaint."

Further commenting upon the statutory authority for the appointment of a receiver, under certain circumstances, as provided by section 564 of the Code of Civil Procedure, Justice Wallace says: ''The case . . . is not included in the sixth subdivision of this statute, . . . the appointment here, not having been made 'after judgment' . . . The particular subdivision, however, which is supposed to confer the power . . . is the fifth—being the only portion of the statute in which corporations are named. . . . There is, of course, no such thing as an action brought distinctively for the mere appointment of a receiver—such an appointment, when made, is ancillary to or in aid of the action brought. Its purpose is to preserve the property pending the litigation so that the relief awarded by the judgment, if any, may be effective. The authority conferred upon the court to make the appointment necessarily presupposes that an action is pending before it, instituted by someone authorized by law to commence it. But there is no statute of this state, . . . which undertakes to confer upon a private person, either as stockholder, or a creditor, the right to maintain an action to dissolve a corporation upon the ground that it is insolvent, or to obtain relief by seizing its property out of the hands of its constituted management, and placing it in the hands of a receiver.''

The effect of the foregoing language construing section 564, subdivision 5 of the Code of Civil Procedure, which reads: ''A receiver may be appointed . . . (5) in the cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights,'' is to assert that, even if the corporation is insolvent, a mere creditor may not maintain an action in equity and procure the appointment of a receiver to take the custody of property and the management of a corporation away from its legally constituted directors, amounting to a virtual dissolution of the corporation, without having first reduced his claim to a judgment and exhausting his legal remedies, and particularly without making the alleged malefactors parties to the action. This would have been the exact result in the instant case if plaintiff's equitable action were permitted to stand.

Nor does the ''trust fund doctrine'' aid respondent in the instant case. If we correctly understand its claim to mean

that this fiction has bestowed upon it a sort of creditor's lien upon the assets of the corporation defendant, which entitles him to maintain an equitable action upon a mere allegation of insolvency, without first reducing his claim to a judgment, it certainly has mistaken his remedy. According to this trust fund doctrine, some authorities in America have held that the capital stock of a corporation, or the assets of an insolvent corporation representing its capital stock, constitutes a trust fund for the benefit of creditors, upon which they have an equitable lien for the payment of their claim. (8 Fletcher's Ency. of Corp. 8635, secs. 5027–5030.) But this theory of attaching a lien to the assets of a corporation for the payment of creditor's claims has been greatly modified, if indeed it has not been totally repudiated in America. And it never was the law in England. In the last text cited, at page 8643, it is said: "The doctrine in general has been very much criticised." Professor Pomeroy refers to the theory as one based on analogy and metaphor. He says in 3 Pomeroy's Equity Jurisprudence, section 1046, "They are not, in any true and complete sense, trusts, and can only be called so by way of analogy or metaphor." The extent to which the so-called "trust fund" applies to corporations, is explicitly asserted in a series of United States supreme court decisions, and may be epitomized in the statement of Justice Field in the case of *Fogg* v. *Blair*, 133 U. S. 534 [33 L. Ed. 721, 10 Sup. Ct. Rep. 338, see, also, Rose's U. S. Notes], wherein he concludes by saying: "Such a doctrine has no existence." And in the leading case of *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371 [37 L. Ed. 1113, 14 Sup. Ct. Rep. 127], it was held that a contract creditor could not maintain an action in equity to compel a corporation to respond to his claim, until it had first been reduced to a judgment. Mr. Justice Brewer there says with respect to the trust fund doctrine: "We do not concur in this view. It is at war with the notions which we derive from the English law with regard to the nature of corporate bodies. A corporation is a distinct entity. Its affairs are necessarily managed by officers and agents, it is true; but in law, it is as distinct a being as an individual is, and is entitled to hold property as absolutely as an individual can hold it. Its estate is the same; its interest is the same; its possession is the same.

Its stockholders may call the officers to account, and may prevent any malversation of funds, or fraudulent disposal of property on their part. But that is done in the exercise of their corporate rights, not adverse to the corporate interests, but coincident with them. . . . The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in , trust, or subject to a lien in their favor, in any other sense than does an individual debtor.'' The extreme limit to which this doctrine may be said to extend is that ''the capital stock or assets of a corporation are a trust fund for the benefit of the corporate creditors when the corporation has either suspended its business, or has become insolvent, and its assets have been placed in the possession of a court of equity and are in the course of administration for final settlement and distribution.'' (4 Thompson on Corporations, 2d ed., 39, sec. 3421.)

In support of its claim of right to maintain a creditor's bill in this action, the appellant relies upon the cases of *Blanc* v. *Paymaster Mining Co.*, 95 Cal. 524 [29 Am. St. Rep. 149, 30 Pac. 765]; *Miller* v. *Kehoe*, 107 Cal. 340 [40 Pac. 485]; *First National Bank* v. *Eastman*, 144 Cal. 487, 493 [103 Am. St. Rep. 95, 1 Ann. Cas. 626, 77 Pac. 1043]; and *Aigeltinger* v. *Einstein*, 143 Cal. 609 [101 Am. St. Rep. 131, 77 Pac. 669]. There appears to be nothing in these cases in conflict with the general rule heretofore announced with respect to the ''trust fund doctrine.'' In *Blanc* v. *Paymaster Mining Co., supra,* it appears that the Esperanza Mining Company was a foreign corporation, which was indebted to plaintiff in the sum of $6,000 represented by two promissory notes. It was alleged that suit had been brought against this company, the claim reduced to judgment and an attachment issued therein. Subsequently all the property of this company was transferred to one Blaisdell as trustee for the benefit of the creditors. Blaisdell purported to convey this property for a nominal consideration to the principal officers and stockholders of the Esperanza Company, who proceeded to organize the defendant corporation for the alleged purpose of defrauding creditors and de-

feating the plaintiff's judgment. In the opinion it was said: "The court below was justified in finding that plaintiff recovered . . . the judgment *alleged in the complaint.*" Apparently the facts of that case brought it directly within the rule announced which requires a corporation creditor to pursue his legal remedies before he may resort to the aid of a court of equity. This was the view which the supreme court evidently took of the facts of that case, for it was cited with approval in support of a declaration of the general rule, in its order denying a rehearing of the case of *Benson* v. *Harriman,* 55 Cal. App. 483, 491 [204 Pac. 255]. So, also, the case of *First National Bank* v. *Eastman, supra,* was against an individual and not a corporation. It is true that the opinion, in commenting upon the general rule, referred to an exception to that rule, as follows, page 493: "Where the defendant is a non-resident, a personal judgment cannot be obtained against him, and therefore the fact of his being a non-resident creates an exception to the rule, and such action can be maintained without the creditor having (first) obtained a judgment." But that case has no application to the facts of the instant case, for the defendant corporation in this case was alleged to be a resident of the county of Los Angeles, where its principal place of business and its property were located. It was therefore not a nonresident of California, and there was no reason why a creditor could not serve it with process and prosecute his claim to judgment in a court of law, so as to procure a lien upon the corporation property.

Likewise, in the case of *Miller* v. *Kehoe, supra,* the defendant was an individual and not a corporation. It was there alleged that the defendant "had commenced proceedings in insolvency, which prevented plaintiff from obtaining judgments against him," and asked to vacate a fraudulent conveyance and assign the property to the estate of the insolvent for the benefit of creditors. This prayer was denied. The court held that "the assignee in insolvency is not entitled to recover the property as assets of the insolvent estate." The question as to the right of a creditor to maintain an action in equity without first reducing his claim to judgment was not discussed or considered. And in the case of *Aigeltinger* v. *Einstein,* 143 Cal. 609 [101 Am. St. Rep. 131, 77 Pac. 669], cited by appellant, the court

quotes with entire approval from Mr. Pomeroy, as follows: "It is a necessary result from the whole theory of the creditors' suits that jurisdiction in equity will not be entertained where there is a remedy at law. The general rule is, therefore, that a judgment must be obtained, and certain steps taken towards enforcing or perfecting such judgment, before a party is entitled to institute a suit of this character. In this there is a uniformity of opinion, but the difficulty arises in determining exactly how far a plaintiff should proceed after he had obtained his judgment. The courts, however, all agree and have held that there are exceptions to the general rule stated above. Whether the case of an attaching creditor who has by his writ secured a lien on the property, but as yet has no judgment, comes within the exception is a question about which the decisions are not harmonious."

Section 3441 of the Civil Code specifically provides: "A creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation."

For the foregoing reasons the judgment is affirmed.

Hart, J., and Finch, P. J., concurred.